[Civ. No. 768.    Fifth Dist.    June 12, 1967.]

STEWART J. LONG, Plaintiff and Respondent, v. L. KAY
LONG, Defendant and Appellant; MRS. RAY VALEN-
TINE, Intervener and Respondent.

Bradford, Cross, Dahl & Hefner and Theodore M. Marois for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Zarick & Zarick and Marco S. Zarick for Intervener and Respondent.

STONE, J.—Appellant, the mother of a minor child, appeals from an order denying her application for a modification of the child custody provisions of a divorce decree. She and Stewart J. Long were married May 28, 1955; Dawni Long, their child, was born May 20, 1956. They separated in September 1957, and the father instituted divorce proceedings against the mother in Sacramento County in 1959. The interlocutory decree of divorce, entered April 2, 1959, recites: ". . . by stipulation it was agreed . . . that said minor child reside with Mrs. Ray Valentine, the maternal great-aunt of the child until further order of this Court; . . ."

The custody order, entered pursuant to the stipulation, awarded legal custody to the father and physical custody to the child's maternal great-aunt.

Appellant moved to Colorado and in July 1960 married

734

Waldon Faulkner, her present husband. At that time she had a son, Nickie, born in 1958, whom Faulkner later adopted. They now have two children of their own.

Meanwhile, Dawni remained with her great-aunt, Mrs. Ray Valentine, in Sacramento, and at some time which is not precisely specified, her name was changed to Cheryl Valentine by order of the Sacramento Superior Court.

In the present proceedings, Stewart Long, the father, and Mrs. Ray Valentine were ordered to show cause why custody of the child should not be awarded to appellant mother. Long, who appeared without counsel, did not oppose the motion. Mrs. Valentine appeared with counsel and vigorously opposed the application for a custody change. The basic issue, of course, was the mother's present fitness to have custody of her child.

Appellant admitted that her son, Nickie, was born out of wedlock; that in 1958 she left her former husband, Stewart Long, to go with one Louis Mantzouranis, the father of Nickie; that in 1959 she went to Colorado because Mantzouranis was in prison in Canyon City. She testified that she had not heard from him since the early part of 1960. She also testified that she had been convicted of forgery in 1958 but since then she has not been involved in any criminal matter. She explained that she consented to the custody arrangement set out in the interlocutory decree because at the time of the divorce her attorney advised her that she had little chance to obtain custody of Dawni and suggested that she place the child with Mrs. Valentine, appellant's aunt, until appellant could establish herself and seek a change in custody.

She and her husband testified that they did not feel they were financially able to support Dawni until the commencement of the modification proceedings in 1965. In May 1962, they purchased a $15,000 three-bedroom home in Arvada, Colorado, located about three blocks from the school Nickie is now attending. They are members of the Arvada Methodist Church and attend services every Sunday. Their children are included in most of their activities, such as softball, bowling, fishing and attending picnics, church activities and football games. In the summer of 1964, their financial condition had improved enough to allow appellant to give up her gainful employment as a keypunch operator and remain at home, devoting her time to the family and the home. At the time of the hearing appellant was 31 years of age and her health was good.

On cross-examination, appellant admitted that since December 1958 she had sent Dawni one present the first Christmas, and one birthday present; that she had sent two birthday cards; that she sent Christmas cards to Mrs. Valentine and family and kept herself informed as to Dawni's welfare through correspondence with Mrs. Valentine and with her own mother, who resides in Sacramento; that she did not visit Dawni from 1959 until 1964; that she visited the child in the summer of 1964 and again in the summer of 1965, at the Valentine home in Sacramento.

Waldon Faulkner, appellant's husband, testified that he is 30 years of age; that his general health is excellent; that he is regularly employed by Caterpillar Tractor Company, earning roughly $500 per month as take-home pay, and, in addition, sells insurance. He believes he has the financial ability to support Dawni and desires to do so.

A duly authenticated copy of a "Final Decree of Adoption" of Dawni Kay Long by Waldon W. Faulkner was introduced in evidence, reflecting that it was entered by the District Court in and for the County of Jefferson, State of Colorado, on August 9, 1965. Pursuant thereto the Department of Public Health of the State of California, on September 17, 1965, issued a "Certificate of Live Birth" showing the name of the child to be Dawni Kay Faulkner and the name of the father to be Waldon W. Faulkner. The natural father, Stewart Long, testified that he relinquished the child for adoption, by a consent in writing.

The only testimony other than that of appellant and her husband relating to her fitness to have custody of Dawni, is that of Mrs. Valentine. She testified, in substance, that appellant infrequently contacted the child during the period from 1959 until 1964, that she received a total of 15 letters from appellant over the years, that the child received two presents sent by appellant and was visited by her three times in 1964 and 1965.

At the conclusion of the evidence, the probation officer was ordered to make an investigation and to file a report with the court. This order was made by the court on its own motion, as it clearly had the authority to do. (Welf. & Inst. Code, § 582; Cal. Family Lawyer (Cont. Ed. Bar) p. 577.) However, no provision was made for service of a copy of the report upon the parties, or for the parties to object to the contents of the report.

The counterpart of Welfare and Institutions Code section

582, pursuant to which the case was referred to the probation officer, is Code of Civil Procedure section 263. This section delineates the procedure to be followed in counties authorized to have domestic relations cases investigators. Under section 263 the investigator is required to file his report not less than 10 days before the hearing, and a copy of the report must be served upon each party not less than 10 days before trial. It also provides that: "Such investigator or investigators who have investigated the care, welfare and custody of the minor children . . . shall be present at the trial of the divorce action of the parties who are the parents or custodians of such minor children, and may be called to testify by the judge *or either party* as to any matter which they have investigated. The testimony of such investigators shall be subject to questions direct and cross which are proper, and shall be competent as evidence." (Italics added.)

Welfare and Institutions Code section 582 provides no procedural guidelines, and no requirements similar to those in Code of Civil Procedure section 263. ▮▮▮ Nevertheless, reports filed pursuant to Welfare and Institutions Code section 582 are hearsay evidence, and this fact accentuates the need to carefully protect the rights of the parties affected by them. Due process of law requires that each party (a) receive a copy of the report, (b) be given an opportunity to cross-examine the investigative officer and to subpoena and examine persons whose hearsay statements are contained in the report, and (c) be permitted to introduce evidence by way of rebuttal.

The case before us points up the possibility of a grave injustice resulting if an interested party is deprived of these rights. While on the witness stand, under oath and confronted by his former wife, the father of the child said nothing about the mother's failure to rehabilitate herself, nor did he deny that his consent to the adoption of the child was given in good faith. Once outside the courtroom, he said he was tricked into signing the consent to adoption, and that the mother of the child had not rehabilitated herself.

▮▮▮ To deny a litigant the right to cross-examine a witness who testifies against him is a denial of due process of law. (*Caesar's Restaurant* v. *Industrial Acc. Com.*, 175 Cal.App.2d 850 [1 Cal.Rptr. 97]; *Fewel* v. *Fewel*, 23 Cal.2d 431, 436 [144 P.2d 592].) The error is compounded when hearsay evidence directly contradicts testimony given under oath in open court and in the presence of the litigant.

▮▮▮ There is no denial of due process, however, when a

litigant waives his right to object to the contents of a report and his right to examine the probation officer or to present counter-evidence. He may waive these rights by failure to make timely objection (*Forslund* v. *Forslund*, 225 Cal.App.2d 476, 495 [37 Cal.Rptr. 489]) or, as here, by stipulation that the probation officer's report may be received and considered by the court as evidence without further hearing. (*Exley* v. *Exley*, 101 Cal.App.2d 831, 837 [226 P.2d 662].)

█ The reporter's transcript reflects that when appellant's counsel objected to the scope of the investigation and report, the court replied: "I understand. You have got a running objection to the *whole thing*. That is fine. . . ." (Italics added.) Standing alone, this would appear to constitute an objection to the report, but the "Amended Memorandum and Minute Order" appearing in the clerk's transcript recites: "It was also stipulated by counsel for both sides that the probation report could be received by the court as evidence pertaining to the issue of fitness of Lorna K. Faulkner."

This language implies that the matter was to stand submitted upon filing of the report, without further hearing. The correctness of the memorandum and order reflecting the stipulation has not been challenged and, in this circumstance, we must presume the court's order reflects what occurred. In the face of the stipulation we find no denial of due process.

The probation officer's report is not made a part of the record, and we do not have it before us. Since it would be highly improper for a court to privately discuss a case with a witness without notice to all parties, we assume the father's contradictory statements were relayed to the court via the probation officer's report. That the court relied heavily upon this information is manifest from the memorandum and order. Had it been obtained in a "private conversation" with the judge, out of the presence of appellant, a reversal would be impelled, but when received pursuant to stipulation as part of a probation report, there is no error.

█ Appellant is quite right in contending here, as well as below, that the fitness of the maternal great-aunt is not an issue; appellant petitioned for custody upon the ground of her present fitness, and this is the sole issue before the court. However, receiving testimony concerning the fitness of the great-aunt is not cause for a reversal since the court did not purport to award custody to her. The sole finding as to fitness

is that appellant failed to satisfy the court she is presently a fit and proper person to have the custody of the child.

The second portion of the order, from which the mother has also appealed reads: ". . . secondly, It Is Hereby Ordered that for the well being and protection of the said child Dawni Kay Long, a petition be filed in the Juvenile Court of Sacramento to determine whether or not this child should be made a ward of that court. It is also the feeling of this Court that the Juvenile Court should appoint counsel to represent Dawni Kay Long in these proceedings."

It appears to us the court had no alternative but to make the order, in view of the peculiar circumstances brought out during the child custody hearing. The decree of divorce awarded legal custody to the father and, pursuant to stipulation of the parties, ordered the child placed in the physical custody of the maternal great-aunt. Physical custody was thus derived through, and was dependent upon, legal custody in the father. During the present hearing, a properly authenticated copy of a Colorado adoption decree was received in evidence. The record reflects that the father of the child consented to the adoption by appellant's present husband. Since the authenticity of the adoption decree stands unchallenged, it is entitled to full faith and credit as the judgment of a sister state. Consequently the natural father no longer enjoys a legal relationship to the child. This, in turn, undermines the basis for physical custody in the great-aunt of the child.

In light of the determination that the natural mother is not entitled to custody, the adoption decree presented a new facet to the case as it established that the father is legally a stranger to his child. The adoptive father did not assert his right to custody, and that issue was not before the court. Thus the legal custody of the child was in limbo. To surmount this impasse, the court ordered a petition filed in juvenile court so that a temporary order for custody could be made pending resolution of the question where legal custody lies.

The order is affirmed.

Conley, P. J., and Gargano, J., concurred.