*1231 Opinion
MOSK, J.
In In re Cindy L. (1997) 17 Cal.4th 15 [69 Cal.Rptr.2d 803, 947 P.2d 1340] (Cindy L), we recognized a child dependency exception to the hearsay rule, providing that the out-of-court statements of children who are subject to juvenile dependency hearings pursuant to Welfare and Institutions Code section 300[1] may be admitted in that proceeding if the statements show particular indicia of reliability, if the statements are corroborated, and if interested parties have notice that the statements will be used. (Cindy L., supra, 17 Cal.4th at p. 29.)
The jurisdictional determination in Cindy L. was made before section 355 was amended to authorize admittance of and reliance on the hearsay statements of a child victim contained in a social study. In Cindy L. we left open the question of the relationship between the amended section 355 and the child dependency exception recognized in that case, and did not address whether and to what extent the former supplanted the latter. (Cindy L., supra, 17 Cal.4th at p. 28, fn. 6.) We do so in this case. Specifically, we consider whether the hearsay statements contained in a social study of a minor who is the subject of a section 300 hearing, and who is deemed to be incompetent as a witness because of an inability at the time of testimony to understand the obligation to tell the truth and/or to distinguish between truth and falsehood, may be admitted and relied on under section 355, if such statements fail to measure up to the standards of reliability prescribed in Cindy L.
As explained below, we conclude that such statements may be admitted, but may not be relied on solely as a basis for a jurisdictional finding unless the court finds that they show special indicia of reliability. We further conclude that the statements in question in this case do possess such indicia of reliability. We therefore affirm the judgment of the Court of Appeal.
I. Statement of Facts
Lucero L. was born in August 1994. In addition to Lucero, her mother Yolanda E. has six other children, including Fidel R., born around 1970, Maribel R., born in 1980, Nericela R., born in 1982, and Alma R., born in 1984. These children were not fathered by Lucero’s father, Otilio L. (Yolanda E. and Otilio L. will sometimes be referred to collectively as the parents.)
In November 1994, allegations came to light that Otilio had molested Lucero’s three half sisters and had raped Maribel. A dependency petition *1232 was filed on Lucero’s behalf by the County of San Diego (County) as a result and a criminal investigation was initiated. The three half sisters recanted their previous statements in January 1995. According to the social worker’s January 30, 1995, report, Maribel, Nericela, and Alma said they had lied about the molestation because they did not like Otilio, because he diverted Yolanda’s attention from them, and because they wanted him out of their home. On April 10, the court granted county counsel’s motion to dismiss the petition for insufficient evidence.
A report was made to the County’s child abuse hotline on July 15, 1997, alleging that Otilio had touched Lucero in her genital area, that he drank, and that he was at home with her daily while Yolanda worked. Later that day, social worker Liliana Rodriguez interviewed Lucero privately at home. Lucero said, “My daddy does not drink anymore.” She said he touched her “cola,” pointing to and touching her vaginal area, and that this “made owies.” When Rodriguez asked how he touched her, Lucero put her index finger at the bottom of the shorts of a stick figure Rodriguez had drawn, between the figure’s legs, and moved her finger upward. She also said, in Spanish, “I touched the butt of my daddy,” again pointing to and touching her vaginal area. She denied that Otilio had touched her buttocks.
Also on the same day, social worker Rodriguez interviewed Maribel. She explained that she had recanted her accusations against Otilio several years ago because of pressure to do so from her mother. Maribel told Rodriguez the molestation did occur; it began toward the end of the sixth grade, took place while Yolanda was working, and consisted of “everything.” When asked to clarify, Maribel said Otilio touched her vaginal area, penetrated her vagina with his penis, kissed her and placed his tongue in her mouth, fondled her breasts, undressed her, and held her hands over her head with one hand. He made no overt threats but implied something would happen to Yolanda and said “[n]o one would believe you.” Maribel said Otilio tried to molest the other girls and she believed they were fondled but not penetrated.
In the interview, Maribel expressed concern for Lucero. Lucero told her she was afraid to shower because Otilio showered with her. Lucero said Otilio lay on top of her and demonstrated how he did this. Maribel described the movement as sexual, “like when someone had sex.” She said she asked Lucero if she had seen her mother doing that and Lucero said, “No, papi.” Maribel reported that when Lucero went to the bathroom she complained of “owies.” Maribel said Yolanda mistrusted Otilio and told Maribel to take Lucero; Maribel tried to have Lucero stay with her for days. Maribel did not want to hurt Yolanda, but realized Lucero would be removed from Yolanda’s home and wanted Lucero to live with her when she turned 18. Maribel *1233 reported Otilio told “sick and perverted jokes” and that while he molested her, he boasted other girls her age wanted him. She said her paternal grandfather, Yolanda’s father-in-law, had molested Yolanda, and Yolanda tried to protect the girls from that side of the family.
Social worker Rodriguez also interviewed Yolanda on July 15. Yolanda said Otilio did not drink and had not molested Lucero, who was with a babysitter most of the time while she was at work. She denied allowing Lucero to see any sexual behavior.
On July 18, 1997, a new petition was filed concerning Lucero, alleging that between January 1 and July 15, Otilio sexually abused her, including occasionally touching her vaginal area, causing minor pain, and lying on top of her and moving as if having sexual intercourse with her (§ 300, subd. (d)). It further alleged that between September 1, 1993, and November 30, 1994, Otilio sexually abused Maribel in the manner described above, putting Lucero at substantial risk of sexual abuse (§ 300, subd. (j)). Lucero was ordered detained out of her home.
A social study[2] by social worker Maria Ysela Galvan-Dupree was prepared for the September 22, 1997, hearing. The social study contained much of the material from Rodriguez’s July 15 interviews. It also noted Lucero reported her father disciplined her by hitting her with a belt and that Yolanda did nothing. It was also reported that Yolanda said she would attend only one cycle of a sexual abuse program, although the program recommended she attend for at least a year, and that she said no one would keep her away from Otilio; and she denied he had molested any of her daughters. An additional information report also prepared for the September 22, 1997, hearing noted a July 22, 1997, letter from foster mother Alice S. stating that on July 19, the day after she picked up Lucero at Polinsky Children’s Center, Lucero repeated, “Poppy owee.” When Alice said, “Donde owee? [Where owee?],” Lucero placed her hand over her vaginal area and said, “No aqui [not here],” then, bending over slightly, indicated her rectal area with her fingers and said, “Aqui owee [here owee]. Poppy owee.”
An October 13 police report summarized Officer Theresa Ramirez’s October 9 videotaped interview of Lucero in Spanish. According to Ramirez, “Lucero was difficult to understand because of her limited verbal skills due to her age” and “It was difficult to establish if Lucero knew the difference *1234 between telling the truth and telling a lie.” Lucero said she lived with her Papa Otilio and her Mami Yolanda. She referred to the vagina as “cola” and “pee pee” and the rectum as “cola” and “caca.” While she had difficulty identifying body parts related to bad touching, she made statements indicating her “Dad” and “Papa” had touched her in a bad way. She said, “Mi papa es malo” (my Dad is bad). “Its what my Dad did.” When asked if someone had touched her “cola,” Lucero replied, “Mi Papa” and pointed to her genital area, front and back. She referred to an anatomically correct male doll as her “Papa” and indicated through actions and statements that her “Papa” had touched her vaginal and rectal áreas. She indicated, though not very clearly, that her “Papa” had touched her with his penis. She could not say how the touching had occurred, although she said she had seen her father’s penis. Ramirez concluded “some inappropriate sexual acts may have occurred between Lucero and ... Otilio [but] because of her age and verbal skills there were inconsistent statements and it appears that this may be a difficult case for prosecution.”
A November 13 medical examination of Lucero revealed an anal fissure, which could be caused by constipation or abuse. According to the medical report, there were no behavioral or emotional symptoms indicating abuse. The physician concluded the exam was normal and neither supported nor negated a history of sexual abuse.
The jurisdictional hearing began on January 14, 1998, and concluded on January 21. The parents made motions in limine to exclude Lucero’s statements, including those to social workers, police officers, and family members. All counsel stipulated that Lucero was legally incompetent to testify and the court concluded “it appears to be the case;” The court eventually ruled Lucero’s statements were inadmissible under In re Cindy L, supra, 17 Cal.4th 15, because although inherently reliable they were uncorroborated. The court further concluded, however, that the statements of Lucero’s quoted in her social study were admissible under section 355, subdivision (c)(1)(B) and (C), permitting reliance on the hearsay statements in social studies made by minors under age 12 who are the subject of the jurisdictional hearing and by social workers and peace officers.
Maribel, then 17 years old, testified that she had told social worker Rodriguez the truth in their July 15, 1997, interview, but was reluctant to speak directly about what had occurred between her and Otilio. The court recessed for lunch, and when it reconvened, Maribel testified she had gone to lunch with Yolanda, that she did not remember if Otilio had touched her, and that she had lied when she had told Rodriguez otherwise. Maribel further testified that around the time Lucero was detained in July of 1997, Lucero *1235 had said the word “owie” and when Maribel asked what hurt, Lucero pointed to her vaginal area. This happened more than twice. Maribel checked for a rash but found none. Lucero told Maribel how she got hurt; but Maribel claimed she could not remember what she had said. Lucero said she did not like to shower with her dad. Maribel told Yolanda what Lucero had said.
Social worker Rodriguez testified that in her initial interview with Lucero, the latter did not understand the question whether someone was “bothering her.” After Rodriguez had drawn a stick figure and began naming body parts, she pointed to the vaginal area and asked if “anyone touched you here?” Lucero replied, “Yes. My daddy.”
Social worker Galvan-Dupree testified she had interviewed Maribel one week prior to the hearing and she had recounted the rape incident with Otilio.
Both the parents and the County called expert witnesses. Psychologist Ricardo Weinstein, for the parents, had 12 years of experience in the child abuse field. He testified generally that information from two and one-half year olds lacked dependability and that children younger than four had difficulty expressing their experiences verbally. Information had to be elicited with specific questions, but this led to doubt whether the child was responding to the statement inherent in the question or actually describing a personal experience. After viewing a videotaped interview between Lucero and Officer Ramirez, Weinstein concluded she was not able to differentiate between truth and falsehood, did not comprehend the concept of good and bad touching, and possessed insufficient verbal skills to express her experiences. The videotape showed contamination (that is, a description by the interviewer of an experience the child then “owned”) regarding pain and names of body parts.
Psychologist Constance Dalenberg testified for the County. Dalenberg, a child abuse specialist, testified it was extremely common for children to recant reports of child abuse, due to their attempts to protect themselves physically and psychologically and to protect their families. It was also common for children to re-recant and re-disclose. She further testified that the molestation risk to a man’s three-year-old biological child increased greatly if he had molested an 11- or 12-year-old nonbiological female child in the household, and increased as the three year old aged. The pathology of a man who molested his lover’s 14-year-old daughter was related to the pathology of a man who molested his own two-and-one-half-year-old daughter. These pathologies tended to occur in the same individuals.
Dr. Dalenberg also testified that three year olds were not inherently unreliable in reporting events, they merely gave less information. She had *1236 watched the videotaped interview of Lucero and saw one clear disclosure of touching of private parts. Lucero touched herself in response to a question; research showed this is how molestation victims respond; children who made false allegations merely nod and rarely elaborate. Directive questions (e.g., “did he touch you here?”) were asked in the videotape; such questions were required with three year olds. Suggestive questions (e.g., “he touched you here, didn’t he?”) were not asked. Dr. Dalenberg testified on cross-examination that a suggestive question asked every day for 11 months would yield an affirmative answer if the questioner appeared to want one, but would be likely to yield a negative response in another setting. A father’s help with a child’s hygiene would not cause an affirmative answer.
Foster mother Alice S. testified that in early January 1998, Alice observed Lucero lying on her back, with her hands inside her clothing, rubbing her genital area. Alice asked, “Who showed you that?” and Lucero said, “Daddy did it.”
Lucero’s counsel’s investigator, Ruby Shamsky, testified that she had interviewed Maribel on October 10, 1997, and that she had recounted, after initial reluctance, her rape by Otilio and her hatred of Otilio. Beginning when Lucero was two years old, Maribel asked her regularly whether Otilio had touched her. Maribel feared she might have taught Lucero to say she was touched.
At the conclusion of the hearing, the juvenile court found that Lucero had been molested by Otilio and therefore came within the jurisdiction of the juvenile court pursuant to section 300, subdivision (d). The court based its finding upon the statement Lucero made to Rodriguez and to her sister that her father had touched her in the vaginal area, and had lain on top of her, and that she had an “owie” as a result. The court also found that Lucero’s sister, Maribel, had been sexually abused by Otilio, that her recantations were untrue, that Dalenberg’s testimony was credible that “someone who has molested a child of his girlfriend has a much greater likelihood of molesting his own child when both of them are females.” Though not entirely clear, this latter evidence supported what appears to have been the juvenile court’s conclusion that there was a “substantial risk that . . . Lucero would be abused” and therefore provided an alternative basis for finding that Lucero came within the jurisdiction of section 300, subdivision (d).[3] The testimony of Maribel also supported what appears to have been the juvenile court’s *1237 alternative finding under section 300, subdivision (j), that Lucero came within the jurisdiction of the court because her “sibling has been abused . . . and there is substantial risk that the minor will be abused."[4]
The Court of Appeal affirmed. It held that section 355, subdivision (c)(1)(B), created an exception to the rule against hearsay that was separate from and in some respects broader than the child dependency exception recognized in Cindy L. It rejected the parents’ due process argument, concluding the parents’ ability to cross-examine the hearsay declarants during the hearing—other than the child herself—provided sufficient due process guaranties. The court further concluded that the juvenile court’s jurisdictional finding was supported by substantial evidence. In affirming the sufficiency of the evidence supporting the juvenile court’s findings under section 300, subdivision (d), the court did not distinguish between the lower court’s finding that Lucero had been abused, which appears to have been based solely on her hearsay statements, and its finding that there was substantial risk that she would be abused, based on the testimony of Maribel and Dr. Dalenberg recounted above. Because the court affirmed the trial court’s judgment based on section 300, subdivision (d), it did not consider whether the trial court was correct as to its section 300, subdivision (j), finding.
We granted review.
II. Discussion
A. The Child Dependency Exception
Because this case concerns questions left unanswered in Cindy L., we begin by reviewing the reasons for the recognition of the child dependency exception in that case. Cindy L. was decided against the background of the special evidentiary rules for dependency hearings framed by this court in In re Malinda S. (1990) 51 Cal.3d 368 [272 Cal.Rptr. 787, 795 P.2d 1244] (Malinda S.). “We concluded in Malinda S. that a ‘social study’ prepared by a social worker pursuant to sections 281 and 358 fits within the class of ‘legally admissible’ evidence on which a court can rely in a jurisdictional *1238 hearing, despite the fact that a social study is itself hearsay and may contain multiple levels of hearsay. Our conclusion was based in part on section 281, which provides that ‘[t]he court is authorized to receive and consider the [social study] reports and recommendations of the probation officer in determining any . . . matter’ regarding the custody, status, or welfare of the minor. We found that the statute, together with California Rules of Court, rule 1450(c), authorizes a court to consider social studies in making its jurisdictional finding.” (Cindy L, supra, 17 Cal.4th at pp. 21-22.)
In Cindy L., we considered two questions. The first was whether, apart from the social study exception to the hearsay rule recognized in Malinda S., there was a child dependency exception. As we explained: “In Malinda S. we assumed that those whose hearsay statements appear in a social study would be available for cross-examination. (Malinda S., supra, 51 Cal.3d at p. 384.) We did not consider whether such statements would be admissible and competent evidence if the testimony of the child making those statements was not available during the hearing.” (Cindy L, supra, 17 Cal.4th at p. 22.) In confirming the child dependency exception to the hearsay rule that had been created by the Court of Appeal in In re Carmen O. (1994) 28 Cal.App.4th 908 [33 Cal.Rptr.2d 848] {Carmen O.), we permitted, under certain conditions, hearsay statements regarding abuse by young children who are the subject of a jurisdictional hearing, but are unavailable because they are intimidated by the courtroom setting. “[T]here is a substantial need for the class of hearsay evidence contained in the child dependency exception. As the Carmen O. court and the sources on which it relied recognize, there are particular difficulties with proving child sexual abuse: the frequent lack of physical evidence, the limited verbal and cognitive abilities of child victims, the fact that children are often unable or unwilling to act as witnesses because of the intimidation of the courtroom setting and the reluctance to testify against their parents. [Citation.] Given these realities, the categorical exclusion of child hearsay, or admission only if the hearsay fits within traditional yet narrow categories such as the ‘spontaneous utterance’ exception, will often mean the exclusion of significant, reliable evidence required for the juvenile court to assert its jurisdiction over the child and to ultimately protect him or her from an abusive family relationship.” (Cindy L, supra, 17 Cal.4th at p. 28, fn. omitted.)
We recognized, nonetheless, that “[e]ven if hearsay evidence is necessary . . . , an exception to the hearsay rule is not valid unless the class of hearsay evidence proposed for admission is inherently reliable.” (Cindy L, supra, 17 Cal.4th at p. 28.) After reviewing various statutory and American Bar Association sources we arrived at three conditions for admitting out-of-court statements of abuse of children subject to jurisdictional hearings *1239 pursuant to section 300: “(1) the court must find that the time, content and circumstances of the statement provide sufficient indicia of reliability; (2) a child must either be available for cross-examination or there must be evidence of child sexual abuse that corroborates the statement made by the child; and (3) other interested parties must have adequate notice of the public agency’s intention to introduce the hearsay statement so as to contest it.” (Cindy L., supra, 17 Cal.4th at p. 29.) As to the first requirement, regarding the statement’s inherent reliability, we explained: “The nonexhaustive list of factors that the United States Supreme Court has cited as relevant to the reliability of hearsay statements made by child witnesses in sexual abuse cases are (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected of a child of a similar age; and (4) lack of motive to fabricate. (Idaho v. Wright [(1990)] 497 U.S. [805,] 821-822 [110 S.Ct 3139, 3150, 111 L.Ed.2d 638].)” (Cindy L, supra, 17 Cal.4th at pp. 29-30.)
The second question we considered in Cindy L. was whether the child dependency exception should apply if the child is unavailable for cross-examination, not because she is intimidated by the courtroom setting, as in Carmen O., but because she has been judged to be incompetent as a witness. Specifically, we considered the argument made in that case that “if a child is found to be incompetent because of the failure to understand the duty to tell the truth or to distinguish between truth and falsity—which [may be] term[ed] ‘truth incompetent’—then it must be presumed that [the child] was incompetent at the time the hearsay statement was made; accordingly, her statement should not be admitted absent proof rebutting this presumption of incompetence.” (Cindy L., supra, 17 Cal.4th at p. 31.)
This argument found support in the holding of the Court of Appeal in In re Basilio T. (1992) 4 Cal.App.4th 155 [5 Cal.Rptr.2d 450]. As we explained, “[E]very person regardless of age is competent to testify (Evid. Code, § 700) except if he or she is ‘[i]ncapable of expressing himself or herself concerning the matter so as to be understood . . . ; or [¶] [i]ncapable of understanding the duty of a witness to tell the truth.’ (Id., § 701.) Admitting that authority on the matter was scarce, the Basilio T. court found that, as a general rule, ‘a hearsay declarant must be competent when an out-of-court statement is made’ (4 Cal.App.4th at p. 167) .... The [Basilio T.] court declared, quoting 5 Wigmore, Evidence (Chadbourne rev. 1974) section 1424, at page 255: ‘ “The hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible. The admission of hearsay statements, by way of exception to the rule, therefore presupposes that the assertor possessed the qualifications of a witness . . . in regard to knowledge and the like. These qualifications are fundamental as *1240 rules of relevancy. Thus these extrajudicial statements may be inadmissible because of their failure to fulfill the ordinary rules about qualifications, even though they meet the requirements of a hearsay exception.” ’ [Citation.] . . . ‘Absent a showing otherwise, the young child who is unable to differentiate between truth and falsehood at trial would not have possessed that qualification at an earlier point in time.’ ” (Cindy L., supra, 17 Cal.4th at p. 32, italics omitted.)
We recognized in Cindy L., however, that “Basilio T. ... is not dispositive of the case before us. At issue there was the admission of a child hearsay statement under the broad ‘social study’ exception recognized in Malinda S. Although we concluded in Malinda S. that the ‘elements of objectivity and expertise lend [social studies] a degree of reliability and trustworthiness’ (Malinda S., supra, 51 Cal.3d at p. 377), such that the social studies will generally contain accurate reports of interviews with children, the statements of the children themselves found therein do not necessarily possess any particular guaranties of reliability. Basilio T. thus would not permit judicial reliance on such statements when they come from children unavailable for cross-examination and seemingly incompetent to tell the truth.” (Cindy L, supra, 17 Cal.4th at pp. 32-33.) But we concluded “that a finding of incompetence to testify should not be a categorical bar to the admission of a child’s out-of-court statements.” (Id. at p. 34.) Rather, we held that an out-of-court statement by a child determined to be legally incompetent who is the subject of a dependency hearing was admissible as long as it met the criteria of reliability that we articulated in the child dependency exception. (Id. at p. 33.) We quoted with approval the statement of the Washington Supreme Court in State v. Doe (1986) 105 Wn.2d 889 [719 P.2d 554, 557-558] that “[Reliability does not depend on whether the child is competent to take the witness stand, but whether the comments and circumstances surrounding the statement indicate it is reliable. . . . [¶] . . . The child’s lack of competency may be a factor, but it is not controlling.”
B. Section 355, the Child Dependency Exception, and Due Process
In 1996, after the trial court’s decision in Cindy L., the Legislature amended section 355 to partially codify and partially modify our holding in Malinda S. (See Stats. 1996, ch. 36, § 1; see also Cindy L, supra, 17 Cal.4th at p. 22, fn. 3.)[5] Section 355, subdivision (a), now provides that for purposes *1241 of a jurisdictional hearing, “[a]ny legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the *1242 jurisdiction of the juvenile court is admissible and may be received in evidence.” Subdivision (b) then provides that “a social study . . . and hearsay evidence contained in it, is admissible and constitutes competent evidence on which a finding of jurisdiction pursuant to section 300 may be based, to the extent allowed by subdivisions (c) and (d).”
Section 355, subdivision (c) makes clear that only certain types of hearsay are sufficient to support a jurisdictional finding. Subdivision (c)(1) provides that “[i]f any party to the jurisdictional hearing raises a timely objection to the admission pf specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions[.]” Most pertinent to our discussion is subdivision (c)(1)(B): “The hearsay declarant is a minor under the age of 12 years who is the subject of the jurisdictional hearing. However, the hearsay statement of a minor under the age of 12 years shall not be admissible if the objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence.” (§ 355, subd. (c)(1), as added by Stats. 1996, ch. 36, § 1; see also Cal. Rules of Court, rule 1450(d).) Unlike our social study exception recognized in Malinda S., section 355, subdivision (c)(1)(B) does not apply only when the child is available for cross-examination: Section 355, subdivision (c)(1)(D), creates a separate exception from the hearsay rule when the declarant is available for cross-examination.
Due to the timing of the legislation, we did not need to decide in Cindy L. “whether the amended section 355 obviates the need for the child dependency exception. The precise meaning of section 355, and whether it permits a social service agency to produce via a social study report all the evidence that would be produced through the child dependency exception is a question left for another day.” (Cindy L, supra, 17 Cal.4th at p. 28, fn. 6.) That is the question we confront at least partially today. More precisely, we address (1) whether the out-of-court statements of a “truth incompetent” minor who is the subject of a jurisdictional hearing is admissible in such a hearing under section 355, even if these statements do not meet the requirements of the child dependency exception recognized in Cindy L. and, (2) if so, whether such evidence, by itself, is sufficient to sustain a jurisdictional finding.
We conclude, consistent with the language of section 355, subdivision (b), that the hearsay statements contained in social studies should be admissible *1243 even if they do not meet the requirements of the child dependency exception and even if the minor is incompetent to testify. The parents argue that section 355, subdivision (a), allows only “legally admissible evidence,” and that although section 355, subdivision (b) permits admission of all hearsay statements contained in social studies, it does not preclude the exclusion of those statements on grounds other than hearsay, i.e., due to the minor’s incompetence to distinguish between truth and falsehood on the witness stand. They further argue that because the statements of incompetent minors, such as Lucero, are not made admissible by section 355, then the statements are only admissible if they meet all the requirements set forth in Cindy L. But the most reasonable way to read section 355 is to read subdivision (b) as qualifying subdivision (a), so that “legally admissible evidence” includes “hearsay evidence contained in” a “social study.” Furthermore, although subdivisions (c) and (d) limit the extent to which such social study hearsay evidence can be relied on exclusively, there is no limitation, except for fraud, deceit, or undue influence, on the admission of hearsay evidence.[6]
The parents further argue that the allowance of such hearsay without the opportunity for cross-examination is a violation of due process under the United States and California Constitutions. (See U.S. Const., Amend. XIV; Cal. Const., art. I, § 7, subd. (a).) In support of this proposition they cite Malinda S., supra, 51 Cal.3d at page 382, in which we quoted with approval the Court of Appeal’s statement in Long v. Long (1967) 251 Cal.App.2d 732 [59 Cal.Rptr. 790], “that in order for a social study to be admissible . . . , due process requires that ‘each party (a) receive a copy of the report, (b) be given an opportunity to cross-examine the investigative officer and to subpoena and examine persons whose hearsay statements are contained in the report, and (c) be permitted to introduce evidence by way of rebuttal.’ ” (Italics added by Malinda S. court.)
The parents’ argument that the admission of hearsay evidence, per se, is a violation of due process, is without merit. In Malinda S., our only constitutional holding was that due process did not require the government to make *1244 available persons quoted in a social study as long as the parties opposing the government had an opportunity to subpoena them. (Malinda S., supra, 51 Cal.3d at p. 384.) Long v. Long, supra, 251 Cal.App.2d 732, and the cases on which Long relied, merely stand for the well-established proposition that in civil proceedings, including less formal administrative proceedings, parties generally have a due process right to cross-examine available hearsay declarants. (Long v. Long, supra, 251 Cal.App.2d at pp. 735-736 [right to probation officer’s report and to cross-examine persons quoted therein in action to modify child custody order]; see also Fewel v. Fewel (1943) 23 Cal.2d 431, 436 [144 P.2d 592] [court improperly relied on a report of investigator in child custody case without the parent’s ability to cross-examine report author or rebut testimony]; Collins, Hearsay and the Administrative Process: A Review and Reconsideration of the State of the Law of Certain Evidentiary Procedures Applicable in California Administrative Proceedings (1976) 8 Sw. U. L.Rev. 579, 606.)
In the present case, however, we are concerned not with a regime that denies the capacity to cross-examine available hearsay declarants or present rebuttal testimony, but rather with whether the Legislature is constitutionally forbidden to permit the admission of the hearsay declaration of a child who, due to incompetence, is unavailable for cross-examination. The admissibility of hearsay evidence in various administrative contexts has long been authorized by statute. (See, e.g., Gov. Code, § 11513, subd. (c); Lab. Code, § 5703.) There is no authority for the parents’ assertion that the mere admission of such evidence in a civil proceeding is unconstitutional.
But while the hearsay declaration of a child contained in a social study may be constitutionally admitted, Malinda S. and the cases on which it relied suggest the due process problems inherent in relying too heavily on the hearsay statements of incompetent minors to make jurisdictional findings when there has been no opportunity for cross-examining the minor. “The admissibility and substantiality of hearsay evidence are different issues.” (Gregory v. State Bd. of Control (1999) 73 Cal.App.4th 584, 597 [86 Cal.Rptr.2d 575].) As this court has long recognized, “ ‘[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence.’ There must be substantial evidence to support such a . . . ruling, and hearsay, unless specially permitted by statute, is not competent evidence to that end.” (Walker v. City of San Gabriel (1942) 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383], overruled on other grounds in Strumsky v. San Diego County Employees Retirement Assn. (1974) 11 Cal.3d 28, 37, 44 [112 Cal.Rptr. 805, 520 P.2d 29]; see also Daniels v. Department of Motor Vehicles (1983) 33 Cal.3d 532, 537 [189 Cal.Rptr. 512, 658 P.2d 1313].) Except in those instances recognized by statute where the reliability of hearsay is established, “hearsay evidence alone ‘is insufficient to satisfy the requirement of *1245 due process of law, and mere uncorroborated hearsay does not constitute substantial evidence. [Citation.]’ ” (Gregory v. State Bd. of Control, supra, 73 Cal.App.4th at p. 597; see also Armistead v. City of Los Angeles (1957) 152 Cal.App.2d 319, 324 [313 P.2d 127].)
This rule has been partly codified in Government Code section 11513, subdivision (d) for any proceeding for which the Administrative Procedures Act is applicable: “Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.” Section 355, subdivision (c)(1), also incorporates this due process principle, providing that a hearsay statement contained in a social study that is inadmissible in a criminal or civil trial generally cannot “by itself . . . support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based.”
Section 355, subdivision (c)(1)(B), as explained, is an .exception to the above rule. It provides that hearsay statements contained in a social study can serve as sole support for a jurisdictional finding if “[t]he hearsay declarant is a minor under the age of 12 years who is the subject of the jurisdictional hearing.” (Ibid.) It is not apparent, however, why sole reliance on such hearsay statements would not raise the same due process problems as with other hearsay. To be sure, we stated in Malinda S. that “elements of objectivity and expertise lend [social studies] a degree of reliability and trustworthiness.” (Malinda S., supra, 51 Cal.3d at p. 377.) But as noted, although such expertise goes toward ensuring that “social studies will generally contain accurate reports of interviews with children, the statements of the children themselves found therein do not necessarily possess any particular guaranties of reliability.” (Cindy L, supra, 17 Cal.4th at p. 33.) Thus, the inclusion of hearsay statements in a social study does not cure the due process problem inherent in solely relying on the out-of-court statements of a minor unavailable for cross-examination.
Nor do we believe that due process is necessarily protected by placing the burden on those opposing the government to prove that the minor’s statements were “the product of fraud, deceit, or undue influence,” as section 355, subdivision (c)(1)(B), provides, in order to keep the statements from being admitted. The burden of proving “fraud, deceit, or undue influence,” while not easily borne under any circumstance, is especially difficult when the witness who is generally the most critical to proving such a case— the minor herself—is unavailable for cross-examination. Although there is nothing unconstitutional about allowing the minor’s hearsay statements to be admitted in a jurisdictional proceeding, subject to exclusion only on *1246 grounds of fraud, deceit, or undue influence, a serious due process problem is raised by permitting, as section 355, subdivision (c)(1)(B) does, sole reliance on such statements without any particular indications of the statements’ reliability.
This due process problem is compounded in the case of a child who has been determined to be incompetent to distinguish between truth and falsehood. As we noted in Cindy L., “truth competence is a factor in determining the reliability of a hearsay statement” (Cindy L, supra, 17 Cal.4th at p. 35), which is to say that a finding of “truth incompetence” is a factor weighing against the reliability of the child’s out-of-court statement. In concluding that such statements could nonetheless be admissible, we stated: “As our Court of Appeal concluded in People v. Butler [(1967)] 249 Cal.App.2d [799,] 807 [57 Cal.Rptr. 798], ‘The spontaneity of the declarations lend[s] credibility to the exclamations of a hearsay declarant who might be otherwise incompetent, due to minority or other valid reasons, to testify at trial.’ [Citation.] So, too, in the case of the child hearsay exception we recognize today, the fact of the child’s incompetence to testify does not prevent a court from finding that the various circumstances surrounding the statement—not only its spontaneity, but also the precociousness of the child’s knowledge of sexual matters, the lack of motive to .lie, and other factors outlined above— lead to the conclusion that the statement bears special indicia of reliability and is therefore admissible. The requirement of either corroboration or availability for cross-examination additionally safeguards against the possibility that the child is merely fabricating the statement.” (Cindy L, supra, 17 Cal.4th at p. 34.) Thus, our conclusion that the hearsay statements of children incompetent to testify may nonetheless be admitted as fully competent evidence was predicated at the very least on the court making a finding that “the statement bears special indicia of reliability.” {Ibid.)
Is this “special indicia of reliability” required by due process? To address this question, we employ the four-part test under California and federal law used to determine what sort of process is due in a given judicial or administrative proceeding. “This flexible balancing standard considers ‘ “(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the [dignity] interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” ’ ” (Malinda S., supra, 51 Cal.3d at p. 383.)
*1247 Applying these factors to the reliability requirement in the present case, we conclude first that the private interest at stake involves the parents’ important liberty interest in maintaining custody of their child. (Santosky v. Kramer (1982) 455 U.S. 745, 751, 758-759 [102 S.Ct. 1388, 1393, 1397, 71 L.Ed.2d 599]; Malinda S., supra, 51 Cal.3d at pp. 382-383 & fn. 17.) As the United States Supreme Court has stated, it is “ ‘plain beyond the need for multiple citation’ that a natural parent’s ‘desire for and right to “the companionship, care, custody, and management of his or her children” ’ is an interest far more precious than any property right.” (Santosky v. Kramer, supra, 455 U.S. at pp. 758-759 [102 S.Ct. at p. 1397].) Accordingly, due process requires that a parent only be deprived of that right if evidence of unfitness meets a heightened clear and convincing evidence standard. (Id., at p. 769 [102 S.Ct. at p. 1403].) Although a jurisdictional finding in a section 300 proceeding does not necessarily lead to a termination of parental rights, it is the first step in the termination process and must be protected by due process guaranties. (Malinda S., supra, 51 Cal.3d at pp. 383-384.)
Second, the risk of erroneous deprivation in this case is great, because those opposing the government in a section 300 hearing are critically deprived of the right to cross-examination. This risk is increased by the fact of the hearsay declarant’s legal incompetence to testify due to an inability to distinguish between truth and falsehood, which not only makes the declarant unavailable for cross-examination but also detracts from the declarant’s reliability. The requirement that a hearsay statement in this context possess special indicia of reliability before being exclusively relied on would reduce to some degree this risk of erroneous deprivation.
Finally, there are several vitally important governmental interests at stake. First, of course, is the interest in preventing child abuse. But important too is the interest in producing “an accurate and just resolution” of dependency proceedings. (In re Sade C. (1996) 13 Cal.4th 952, 989 [55 Cal.Rptr.2d 771, 920 P.2d 716].) This interest is explicitly acknowledged in the final paragraph of section 300, which mandates “that nothing in this section disrupt the family unnecessarily or intrude inappropriately into family life . . . .” Nor do we believe the reliability requirement is so stringent that it will impede the government’s ability to protect children in an abusive situation. The child’s hearsay statements would still be admissible. The reliability requirement is not especially formidable, and may be met in a number of ways, as outlined above and as illustrated below. Even without special indicia of reliability, the minor’s hearsay statements, if corroborated by other evidence, would be sufficient to support a jurisdictional finding.
Therefore, we conclude that, section 355 notwithstanding, the out-of-court statements of a child who is subject to a jurisdictional hearing and who is *1248 disqualified as a witness because of the lack of capacity to distinguish between truth and falsehood at the time of testifying may not be relied on exclusively unless the court finds that “the time, content and circumstances of the statement provide sufficient indicia of reliability.” (Cindy L, supra, 17 Cal.4th at p. 29.)
In addition to the requirement of adequate notice of the public agency’s intention to introduce hearsay statements, which the County does not contest, Cindy L. also concluded that corroboration is required in this context in order to admit the hearsay statements of a truth incompetent minor. We observed in Cindy L. that “[t]he requirement of either corroboration or availability for cross-examination additionally safeguards against the possibility that the child is merely fabricating the statement.” (Cindy L, supra, 17 Cal.4th at p. 34.) Is such corroboration also required to fully rely on a hearsay statement when, as here, the statement is contained in a social study? The County contends, inter alia, that much child sexual abuse is uncorroborated and imposition of this requirement will lead courts to fail to intervene in truly abusive situations. The parents contend it is necessary to ensure their due process rights.
In deciding this question, we recall the reason for imposing the corroboration requirement in Cindy L. We recognized that prudence was warranted when courts develop common law exceptions to the hearsay rule, in part because the “rule that hearsay evidence is inadmissible because it is inherently unreliable is of venerable common law pedigree,” and also because “hearsay is an area of law that is now governed by an extensive statutory scheme.” (Cindy L., supra, 17 Cal.4th at pp. 27-28.) The corroboration requirement reflected such prudence in an area in which the truth of a hearsay statement was particularly open to question.
Furthermore, such a requirement was “consistent with the predominant view regarding the admissibility of child hearsay statements. (See Note, [Should We Believe the People Who Believe the Children? The Need for a New Sexual Abuse Tender Years Hearsay Exception Statute (Winter 1995)] 32 Harv. J. on Legis. [207,] 238-239.) As one author has observed, the various indicia of reliability of a child’s out-of-court statements are by their very nature sufficiently ambiguous as to be ‘easily manipulable.’ (Id. at p. 242.) A requirement of corroboration is an additional safeguard against the possibility of fabrication by very young witnesses whose out-of-court statements are insulated from the rigors of cross-examination.” (Cindy L, supra, 17 Cal.4th at p. 30.)
The requirement of corroboration was thus an extra prudential rule. Unlike the special indicia of reliability requirement discussed above, it is not *1249 mandated by due process. Indeed, the United States Supreme Court has held in the context of a child sexual abuse prosecution that the confrontation clause of the Sixth Amendment to the United States Constitution is not offended by the introduction of and full reliance on the child victim’s hearsay so long as it meets the test of reliability. (Idaho v. Wright, supra, 497 U.S. at pp. 820-823 [110 S.Ct. at pp. 3149-3150].) The standard of evidence cannot be higher under the due process clause in a dependency hearing than under the confrontation clause in a criminal trial. Because the corroboration requirement is not imposed by due process, and because section 355 specifically authorizes the admittance of and reliance on the hearsay statements of minors who are the subject of dependency proceedings without reference to corroboration, we conclude that corroboration is not necessary in this context.
In concluding that the corroboration requirement is inapplicable, we emphasize the importance of juvenile court scrutiny of the statements of young children who are both legally incompetent and insulated from cross-examination. At least in the case of a truth incompetent minor, the court may rely exclusively on these out-of-court statements only “if the declarant’s truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility . . . .” (Idaho v. Wright, supra, 497 U.S. at p. 820 [110 S.Ct.at p. 3149].)[7]
Turning to the present case, the juvenile court found that Lucero’s hearsay statements possessed sufficient indicia of reliability under Cindy L., specifically that “the statements that Lucero made to Liliana Rodriguez were spontaneous . . . .” We must uphold the court’s findings if they are supported by substantial evidence. (Soto v. State of California (1997) 56 Cal.App.4th 196, 199 [65 Cal.Rptr.2d 11].) The decision of the juvenile court, if correct, will be upheld even if the stated reasons for the decision are *1250 erroneous or incomplete. (See Belair v. Riverside County Flood Control Dist. (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].) As noted, the factors bearing on a statement’s reliability are not limited to those specifically enumerated in Cindy L. or Idaho v. Wright—any factor bearing on reliability may be considered. While the question is close, we conclude that substantial evidence supports a finding of reliability.
Although her statements were not identical in every detail, Lucero consistently informed questioners that she had been molested by Otilio: first in the initial interview with Rodriguez, shortly thereafter to her foster mother, and a few months later in an interview with a police officer. The social study also reports Maribel as stating that Lucero had told her that Otilio had showered with her and engaged in what appeared to be inappropriate, sexualized behavior. She also stated that Lucero complained of “owies” when she went to the bathroom. Moreover, shortly before the hearing, Lucero’s foster mother, after observing her rubbing her genital area, asked her, “Who showed you that?” Lucero replied, “Daddy did it.” Lucero’s language, while not precocious, was age appropriate and her statements had the mark of being made in her own words, without evidence of prompting. She herself appeared to bear no ill will towards Otilio and had little motivation to make such repeated statements. Given this consistency over a considerable period of time reported by multiple sources, we cannot conclude the trial court abused its discretion in finding the statements reliable. Given this reliability, we conclude Lucero’s statements constituted substantial evidence on which to find her a dependent child of the juvenile court under section 300, subdivision (d).
III. Disposition
We affirm the judgment of the Court of Appeal.
George, C. J, and Werdegar, L, concurred.

 All references are to the Welfare and Institutions Code unless otherwise indicated.

 A social study is defined in section 355, subdivision (b)(1), as “any written report furnished to the juvenile court and to all parties or their counsel by the county probation or welfare department in any matter involving the custody, status, or welfare of a minor in a dependency proceeding . . . .” In the present case, a social study therefore includes the report designated as such as well as the various additional information reports referred to below.

 Section 300, subdivision (d), provides that a child comes within the jurisdiction of the court if “[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused ... by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the *1237 parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse.” (Italics added.)

 Section 300, subdivision (j) provides that a child comes within the jurisdiction of the court if “[t]he child’s sibling has been abused or neglected as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.”

 Section 355 provides in Ml:
“(a) At the jurisdictional hearing, the court shall first consider only the question whether the minor is a person described by Section 300. Any legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court is admissible and may be received in evidence. Proof by a preponderance *1241 of evidence must be adduced to support a finding that the minor is a person described by Section 300. Objections that could have been made to evidence introduced shall be deemed to have been made by any parent or guardian who is present at the hearing and unrepresented by counsel, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of the right to counsel. Objections that could have been made to evidence introduced shall be deemed to have been made by any unrepresented child.
“(b) A social study prepared by the petitioning agency, and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based, to the extent allowed by subdivisions (c) and (d).
“(1) For the purposes of this section, ‘social study’ means any written report furnished to the juvenile court and to all parties or their counsel by the county probation or welfare department in any matter involving the custody, status, or welfare of a minor in a dependency proceeding pursuant to Article 6 (commencing with Section 300) to 12 (commencing with Section 385), inclusive of Chapter 2 of Division 2.
“(2) The preparer of the social study shall be made available for cross-examination upon a timely request by any party. The court may deem the preparer available for cross-examination if it determines that the preparer is on telephone standby and can be present in court within a reasonable time of the request.
“(3) The court may grant a reasonable continuance not to exceed 10 days upon request by any party if the social study is not provided to the parties or their counsel within a reasonable time before the hearing.
“(c)(1) If any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions:
“(A) The hearsay evidence would be admissible in any civil or criminal proceeding under any statutory or decisional exception to the prohibition against hearsay.
“(B) The hearsay declarant is a minor under the age of 12 years who is the subject of the jurisdictional hearing. However, the hearsay statement of a minor under the age of 12 years shall not be admissible if the objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence.
“(C) The hearsay declarant is a peace officer as defined by Chapter 4.5 (commencing with Section 830) of Part 2 of Title 3 of the Penal Code, a health practitioner as defined by Section 11165.8 of the Penal Code, a social worker licensed pursuant to Chapter 14 (commencing with Section 4996) of Division 2 of the Business and Professions Code, or a teacher who holds a credential pursuant to Chapter 2 (commencing with Section 44200) of Part 24 of Division 3 of Title 2 of the Education Code. For the purpose of this subdivision, evidence in a declaration is admissible only to the extent that it would otherwise be admissible under this section or if the declarant were present and testifying in court.
“(D) The hearsay declarant is available for cross-examination. For purposes of this section, the court may deem a witness available for cross-examination if it determines that the witness is on telephone standby and can be present in court within a reasonable time of a request to examine the witness.
“(2) For purposes of this subdivision, an objection is timely if it identifies with reasonable specificity the disputed hearsay evidence and it gives the petitioner a reasonable period of time to meet the objection prior to a contested hearing.
“(d) This section shall not be construed to limit the right of any party to the jurisdictional hearing to subpoena a witness whose statement is contained in the social study or to introduce *1242 admissible evidence relevant to the weight of the hearsay evidence or the credibility of the hearsay declarant.”

 The legislative history reveals that amendments to section 355 were originally proposed by Joseph Spaeth, the Marin County Public Defender. The purpose of the amendments was to mitigate what was perceived as an undue burden of subpoenaing hearsay declarants placed on those opposing the government in a jurisdictional hearing, following our holding in Malinda S. The principal proposed amendment provided that although hearsay statements could be used to supplement or explain other evidence, it would not be sufficient to support a jurisdictional finding unless “the hearsay declarants are made available for cross-examination” and other narrow exceptions. (Sen. Bill No. 86 (1995-1996 Reg. Sess.) as introduced Jan. 10, 1995.) This initial version of Senate Bill No. 86 was opposed by various county organizations and was eventually amended to its present form, causing Spaeth to withdraw his support of the bill. (Marin Public Defender Joseph Spaeth, letter to Sen. Charles M. Calderon, Mar. 20, 1996.) There is no suggestion in the legislative history that the admission of hearsay contained in social studies is qualified by a “truth incompetence” exception.

 The Court of Appeal and the parties focused on section 355, subdivision (c)(1)(B) as a basis for admitting and relying on Lucero’s statements, and accordingly so do we. We note that the juvenile court also found some of Lucero’s statements admissible and reliable under section 355, subdivision (c)(1)(C), which states that the hearsay statements can be the sole basis for a jurisdictional finding if “[t]he hearsay declarant is a peace officer . . . , a health practitioner . . . , a social worker . . . , or a teacher .... For the purpose of this subdivision, evidence in a declaration is admissible only to the extent that it would otherwise be admissible under this section or if the declarant were present and testifying in court.” Reliance on Lucero’s statements in a social study as quoted by a peace officer, or a social worker, present the same due process problems as would reliance on the statements directly quoting her—the fact that the statements are quoted by a social worker or police officer does not invest the statements themselves with any greater reliability in proving the truth of the matter asserted. (See Cindy L., supra, 17 Cal.4th at p. 33.) Our conclusion with respect to the need for inherent reliability of the minor’s hearsay statements is therefore the same whether those statements are offered under section 355, subdivision (c)(1)(B) or section 355, subdivision (c)(1)(C).