[No. B062713. Second Dist., Div. Four. Mar. 4, 1993.]

In re DIRK S., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
DIRK S., Defendant and Appellant.

COUNSEL

David B. Shea, under appointment by the Court of Appeal, for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Jeanette Malouf, Tom Lyon, Jones, Day, Reavis & Pogue and Elwood G. Lui for Plaintiff and Respondent.

OPINION

TAYLOR, J.*—Appellant Dirk S. appeals from the dispositional order, declaring his son, Dirk S., to be a dependent child of the court. (Welf. & Inst. Code, § 300.)[1] Appellant asserts that the court prejudicially erred when it admitted into evidence the hearsay declarations of a witness who was subsequently found incompetent to testify at the hearing; and the court impermissibly delegated power to determine visitation to the Department of Children's Services (DCS). For the reasons set forth below, we affirm.

FACTUAL AND PROCEDURAL SUMMARY

On January 10, 1991, the DCS filed a first amended petition on behalf of Ashley G., 4 years old, and Dirk S., 18 months old. The petition alleged that appellant, who lived with the children's mother and is the father of Dirk S., had sexually abused Ashley by inappropriately touching her and had physically abused her by inflicting a cigarette burn on her body.

The jurisdictional hearing (§ 300) was commenced on July 10, 1991. When Ashley, then 5 years old, was called to testify, it was agreed that she would do so in chambers, although the court noted that the chambers would

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of Judicial Council.

[1]Subsequent statutory references are to the Welfare and Institutions Code unless otherwise indicated.

be crowded. The court asked Ashley several questions, to which she had difficulty responding either verbally or with responsive answers. When the court asked her, "Will you tell the truth today?," Ashley responded, "Just put vaseline on me." When the court reiterated, "Will you tell me the truth today?," Ashley responded, "I don't know." The court requested the DCS attorney to qualify Ashley as a witness. The DCS attorney had only a modicum of success getting Ashley to respond verbally. The court then allowed Ashley's counsel to attempt to qualify her. Counsel engaged in a colloquy with Ashley, using two dolls, which resulted in Ashley revealing that she knew the difference between true statements and false statements. However, when counsel asked Ashley about appellant, she responded that she did not know him, she had not lived in a place where appellant used to visit, she had never seen appellant in her whole life, and she had not seen him when she was a little girl. Ashley did admit to seeing appellant during an earlier hearing.

When direct examination resumed, after several questions, counsel inquired, "Do you remember talking to a police officer?" To which Ashley responded, "No." The court ruled that Ashley was not competent to testify.

The hearing returned to the courtroom. Candy B., Ashley's 7-year-old cousin, testified that when she spent the night at Ashley's house, she slept with Ashley. Appellant entered the darkened bedroom, did not turn on the light, got in the bed and touched her "butt" and "rub[bed] [her] private part." She did not tell him to stop because she was and remains afraid of him. The following morning appellant gave Candy and Ashley a bath. While bathing them, he rubbed them "all over the place," including her "privates" and "butt," with his hand. Candy saw appellant rub Ashley in the same manner and places. Candy felt "terrible" and "uncomfortable"; this was not the way her mother bathed her.

Jean Barefield, a children's social worker for the DCS, was the assigned dependency investigator in this case. Called as a witness, Ms. Barefield testified that she prepared the preadjudication social study report dated January 10, 1991, as well as the supplemental report of June 13, 1991. Over objection, these reports were admitted into evidence.[2]

Ms. Barefield testified that she had talked with both Ashley G. and her mother, Donna G. Donna G. told Ms. Barefield that she was aware that

---

[2]Appellant objected that the court's earlier determination that Ashley was not qualified to testify at the hearing precluded the admission of Ashley's hearsay statements included in the two reports. The court overruled appellant's objection, commenting: "The standards for qualifying to testify as a witness and the standards used to determine whether or not in a non-court-like setting the little girl is capable of accurately and honestly remembering what happened are two different things. . . . [¶] Ashley . . . is a young little child. [¶] She was very intimidated by the number of people. She was scared." "The only finding I made today

Ashley had made statements about Dirk touching her over her panties, and that she first learned about it about 18 months before. Donna G. stated 18 months ago she did not believe Ashley's statements and had not taken any action to protect Ashley. At the time of the interview, however, Donna G. stated that she now believed Ashley was molested.

Ms. Barefield interviewed Ashley twice; the first time on January 7, 1991, at Ashley's maternal grandmother's house. During the interview in a bedroom, Ashley's grandmother was present. Ms. Barefield spoke to Ashley for about 15 or 20 minutes, asking her specific and direct questions. The second interview was around April 1991, and was about five minutes in duration. The contents of the report Ms. Barefield prepared resulted from the January interview.

During the January interview, Ashley did not appear confused or shy; she did not cry. Ms. Barefield understood Ashley "very well." She had interviewed other children between the ages of four and six and found Ashley to be as articulate as other children her age. Based on Ashley's demeanor during the interview, Ms. Barefield believed Ashley was communicating the truth. Ashley was consistent throughout her interview.

Ashley referred to Dirk S. as "Tank." Ashley did not tell Ms. Barefield that Tank had put his finger inside her. In pertinent part, the January 1991, report prepared by Ms. Barefield stated: "Minor Ashley stated that [appellant] wiped Candy's 'privacy' and 'butt.' When asked where [appellant] touched her, she pointed to the vaginal area of her doll. Ashley stated that she does not like [appellant] because he spanks her."

Kim Holly B. is Ashley's maternal aunt; she lives with Ashley's father and is carrying his child. Ms. B. testified that Ashley spoke to her around December 1989, about appellant hurting her "in her private part." Ms. B. asked Ashley if appellant hurt her by spanking her. Ashley responded, "No, he hurt me down here," pointing to her vagina. Ms. B. discussed this information with Ashley's mother the next day, who responded by questioning Ashley in the bathroom. Ms. B. subsequently visited Ashley's home, and observed that appellant continued to live there. In June or July 1990, Ms. B. was bathing Ashley and noticed a small red circular mark on Ashley's stomach. When she asked Ashley about it, Ashley explained that appellant

---

was that she was not able to qualify as a witness and, therefore, testify at all today. [¶] I think that a child at that age can be overwhelmed, intimidated, frightened, scared, and become very inarticulate, can giggle, and otherwise not qualify. [¶] But in a non-courtroom setting, in a social setting where she is not surrounded by four or five adults and a court reporter and the intimidating circumstances that her questioning today presented to her, she could communicate, I think, quite readily and with ease."

had squeezed her stomach and burned her with a cigarette. Ms. B. related this information to Ashley's mother. On December 4, 1990, Ashley also informed Ms. B. that appellant applied vaseline to her vagina all the time and "shoved [his right index finger] in her vagina." After that revelation, Ms. B. notified the police.

Appellant testified that he had never given Candy B. or Ashley a bath. He also denied ever touching Ashley's "private parts," ever squeezing Ashley's stomach and burning it with a cigarette, or ever inserting his finger in Ashley's vagina. Appellant testified that he once applied vaseline to Ashley's vaginal area, at the request of her mother who was busy with the baby. When he did this, he wore a rubber glove and did not insert his finger in her vagina. Appellant further testified that he did not participate in the daily care of Ashley or his son because "that is a woman's job."

Donna G., Ashley's mother, testified that appellant did not assist in the daily care of the children. Only once did he assist, when she was occupied with the baby, Dirk, and she asked him to apply vaseline to Ashley's vagina. Her sister, Holly, did tell her about Ashley's comment about appellant touching her. She immediately spoke to Ashley about it. Ashley told her that her Aunt Holly had told her to say it. Holly never reported any other incidents to Donna G.

Donna G. testified that Ashley got the mark on her stomach when she attempted to spray the aerosol room deodorant in the bathroom and had it pressed against her stomach. Donna G. heard Ashley scream, ran into the bathroom, and found a "perfect round circle" on Ashley's stomach.

After amending the complaint, the court, in pertinent part, found true the allegations in count 1, that "On several prior occasions minor Ashley's mother's boyfriend, [appellant], inappropriately touched minor's buttocks and vaginal area"; and in count 3, that appellant physically abused Ashley by inflicting a cigarette burn on her body.

At the subsequent dispositional hearing, the court declared Ashley and Dirk S. dependent children of the juvenile court, and ordered the minors to continue in their mother's custody and that family maintenance services be provided. In addition, the court ordered "reasonable" and "monitored" visitation for appellant with Dirk.

## APPEALABILITY

A judgment entered pursuant to a section 300 jurisdiction hearing is appealable. (§ 395.)

## DISCUSSION

(1) *Admissibility of Ashley's statements.*

(a) *The Social Study Report.* The parties agree that, pursuant to *In re Malinda S.* (1990) 51 Cal.3d 368 [272 Cal.Rptr. 787, 795 P.2d 1244], a social study report, including the hearsay statements contained therein, is admissible, as an exception to the hearsay rule, in a section 300 jurisdictional hearing. ■ The issue raised by appellant is whether these hearsay statements are admissible when spoken by a minor-witness subsequently found incompetent to testify at the later jurisdictional hearing. In support of his position that such statements are inadmissible, appellant relies primarily on *In re Basilio T.* (1992) 4 Cal.App.4th 155 [5 Cal.Rptr.2d 450]. For the reasons set forth below, we find *In re Basilio T., supra,* to be distinguishable and, therefore, do not engage in a discussion of the validity of its analysis or conclusion.

In *In re Basilio T.,* the trial court failed to strike from the social study report the hearsay statements of the four-year-old minor, whom the court subsequently found to be incompetent to testify specifically because he lacked the ability "to distinguish between the truth and a lie." (*In re Basilio T., supra,* 4 Cal.App.4th at p. 161.) While recognizing that *In re Malinda S., supra,* had held that social study reports were admissible and a proper basis upon which to make a section 300 jurisdictional determination, the *Basilio T.* court found that the nature of the particular infirmity articulated by the court in finding Basilio T. incompetent struck at the foundation upon which a hearsay statement may be designated an exception and admissible—that is, the reliability of the hearsay statement at issue. (*In re Basilio T., supra,* 4 Cal.App.4th at pp. 167-168.)

Here, contrary to appellant's assertion, the court articulated reasons for finding Ashley incompetent to testify at the hearing which did *not* bear on her ability to distinguish between the truth and a lie. As noted in footnote 2, *ante,* the court found that the circumstances under which Ashley was being questioned in chambers created an atmosphere which "intimidated" and "scared" her. The court noted that Ashley was "overwhelmed, intimidated, frightened, scared," rendering her, like any other child her age, "inarticulate." Unlike *In re Basilio T.,* the court here further found that Ashley, in fact, could communicate "quite readily and with ease" in a social, non-courtroom setting. Thus, the court's finding of incompetency was not based on Ashley's ability, or lack thereof, to differentiate between truth and falsehood. In fact, we note the record reveals that when Ashley was questioned by her counsel, she was able to distinguish whether counsel's statements were truthful.

 Appellant objects, asserting that his constitutional right to confront and cross-examine was prejudicially abridged because he was precluded from cross-examining Ashley because she had been found incompetent to testify. Appellant correctly argues that *In re Malinda S., supra,* cited with approval the holding of *Long v. Long* (1967) 251 Cal.App.2d 732, 736 [59 Cal.Rptr. 790],[3] which required that in order for a social study report to be admissible, due process required that "each party (a) receive a copy of the report, (b) be given an opportunity to cross-examine the investigative officer and to subpoena and examine persons whose hearsay statements are contained in the report, and (c) be permitted to introduce evidence by way of rebuttal." (*In re Malinda S., supra,* 51 Cal.3d at p. 382.) Appellant points to item (b) to support his assertion that Ashley's hearsay statement should have been stricken. We do not agree.

Preliminarily, we note that "[d]ependency proceedings are civil in nature, designed not to prosecute a parent, *but to protect the child.*" In these proceedings, "the paramount concern is the child's welfare." (*In re Malinda S., supra,* 51 Cal.3d at p. 384, italics added.) We further note that "[a]s a matter of constitutional principle, the United States Supreme Court has held that a state's compelling interest in protecting child victims of sex crimes from further trauma may in some instances outweigh the right of confrontation. (*Maryland v. Craig* (1990) 497 U.S. 836, 852 [111 L.Ed.2d 666, 683, 110 S.Ct. 3157] [upholding procedure of closed-circuit television testimony by child in criminal case].)" (*In re Elizabeth T.* (1992) 9 Cal.App.4th 636, 641 [12 Cal.Rptr.2d 10].) Certainly, the due process rights of parents in dependency proceedings are no more extensive than the rights of defendants in criminal proceedings, the latter entailing a greater threat to an individual's liberty interests.[4]

Here, Ashley was unavailable as a witness by reason of her incompetency to testify. (Evid., Code, § 240, subd. (a)(2).) The court in *In re Malinda S.* found the social study report prepared for the dependency hearing to have the requisite "indicia of reliability," supporting a conclusion that it qualified as an exception to the hearsay rule. (*In re Malinda S., supra,* 51 Cal.3d at p. 377.)

Moreover, the record reveals that appellant's counsel was granted an opportunity to cross-examine the preparer of the report, regarding the circumstances surrounding her interview of Ashley and Ashley's demeanor

---

[3]*Long v. Long, supra,* concerned the admissibility of a probation report, prepared by the probation officer at the direction of the trial court hearing an application for modification of the child custody provision of a divorce decree.

[4]Other constitutional rights of parents which have been limited in a dependency setting include the Fourth Amendment right against unreasonable search and seizure, protected through application of the exclusionary rule; and the Sixth Amendment right to seek reversal based upon incompetency of counsel. (See *In re Malinda S., supra,* 51 Cal.3d at pp. 384-385.)

during the interview. (See *In re Corey A.* (1991) 227 Cal.App.3d 339, 346 [277 Cal.Rptr. 782].)

We conclude, therefore, that appellant did not suffer a violation of his constitutional right of confrontation by the court's refusal to strike Ashley's statements from the social study report.

(b) *Statements to Kim Holly B.* Appellant also objects to the testimony, admitted over objection, of Ms. B., which described finding the circular mark on Ashley's stomach and Ashley's subsequent explanation. We agree, as does the DCS, that there is no exception to the hearsay rule which would allow admission of this testimony. Consequently, we conclude that there was insufficient evidence offered to sustain a finding that count 3's allegation of physical abuse was true.

This conclusion, however, does not defeat jurisdiction. Section 300, subdivisions (a) through (j), establishes several bases for dependency jurisdiction, any one of which is sufficient to establish jurisdiction. (§ 300.) Count 1, regarding the molestation by appellant was proven by Ashley's statement contained in the social study (Ashley pointing to the vaginal area of a doll when asked about appellant's touching her). In addition, Candy testified that she saw appellant touch Ashley in the same objectionable manner that he had touched her while bathing the two girls. The preponderance of the evidence, therefore, supports the court's finding as to count 1 and, consequently, the jurisdictional finding. (§ 355.)

(2) *Visitation Order.*

Due to some apparent miscommunication with his counsel, appellant was not present at the dispositional hearing. Counsel explained that she thought appellant was in Hawaii on job training. The court's order gave appellant monitored visitation with Dirk S., his son, outside the mother's home. When counsel asked that appellant's visits with Dirk be unmonitored, the court questioned whether the issue was moot, given appellant's presence in Hawaii. Counsel explained that appellant would be returning; whereupon, the court ruled, "I am going to leave it the way it is until we get a resolution of his living location, with department having full discretion to liberalize the visitation." The matter was continued to March 30, 1992.

■ Appellant asserts that the court impermissibly delegated to the DCS the power to determine visitation because it failed to specify the length and time of such visitation.

Section 361, subdivision (a), provides: "In all cases in which a minor is adjudged a dependent child of the court on the ground that the minor is a

person described by Section 300, the court may limit the control to be exercised over the dependent child by any parent or guardian and shall by its order clearly and specifically set forth all such limitations." Pursuant to this section, the court ordered that appellant could visit Dirk S., but that his visits be outside the mother's home and monitored by DCS. Thus, the court defined the right of appellant to visitation and delegated only the ministerial considerations of specific place and time. There was no abuse of the court's discretion or improper delegation of power. (See *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757 [270 Cal.Rptr. 326]; and *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1234-1235 [255 Cal.Rptr. 344].)

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied March 31, 1993.