Filed 2/26/13  In re Tyler W. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re TYLER W., a Person Coming Under the Juvenile Court Law. | B241290 |
| | (Los Angeles County Super. Ct. No. CK14138) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| GREGORY W., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Philip Soto, Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Senior Deputy County Counsel for Plaintiff and Respondent.

_____

Gregory W. appeals the jurisdictional and dispositional orders concerning his son, Tyler W., who was adjudicated a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] We conclude that the evidence was insufficient to support a finding of dependency under section 300, subdivision (a), but affirm jurisdiction under subdivision (b) and also affirm the corresponding dispositional orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Six-year-old Tyler W. was living with his aunt Pamela W. in March 2012 when she was arrested in conjunction with an assault on her ex-boyfriend. Tyler W.'s father Gregory W. was out of town due to his work as a truck driver, and his mother, U.W., could not immediately be found.

The Department of Children and Family Services (DCFS) investigated conditions in both Gregory W.'s home and Pamela W.'s home. Tyler W. reported abuse by his father's girlfriend, T.M., and witnessing violence at Pamela W.'s home. DCFS detained Tyler W. because of the absence of both parents, his age, the domestic violence in his presence, the abuse by T.M. M., and Pamela M.'s mental health issues and arrest. He was soon placed with his maternal grandparents.

DCFS filed a petition alleging that he came within the jurisdiction of the juvenile court under section 300, subdivisions (a) and (b). The subdivision (a) allegation concerned physical abuse by T.M. The subdivision (b) allegations charged that Gregory W. had failed to protect Tyler W. from abuse by T.M. and that he had made an inappropriate plan for the care of Tyler W. when he placed him with Pamela W. DCFS later filed an amended petition adding two further allegations under subdivision (b): that Gregory W. and T.M. engaged in a violent altercation in the presence of Tyler W. during which T.M. ran over Gregory W. with her car, and that Tyler W.'s mother, U.W., had

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

failed to reunify with Tyler W. or his six siblings and had a lengthy and unresolved problem with substance abuse.

When detained, Tyler W. had multiple scratches on his forehead, which Tyler W. attributed to being hit on the head with a belt by T.M. DCFS noted multiple scratches above and below Tyler W.'s right eye; Tyler W. said they were from being scratched by a cat. The social worker "observed what appeared to be a red bruise on Tyler's left forearm, a bruise on Tyler's right elbow, and three small bruises on Tyler's upper back, and multiple bruises on both legs." Tyler W. reported that T.M. hit him all over his body with a belt. A nurse practitioner assessed the marks on Tyler W.'s body and found them to be consistent with eczema.

Tyler's mother, U.W., told DCFS that Tyler W. had told her that T.M. had hit him on his head and arms. She said that Gregory W. had said that T.M. "whopped" Tyler with a belt once. Brent W., Tyler's cousin and the son of Pamela W., told DCFS that he had never seen T.M. hit Tyler W. with a belt, but that Tyler W. had told him that she had done so. Brent W. reported seeing bruises on Tyler W.'s back and that he had marks. The social worker asked Brent W. if he knew that Tyler W. had eczema. Brent W. responded, "'I know what eczema looks like and it didn't look like that.'"

Gregory W. and T.M. denied that she had ever hit Tyler W. Tyler W.'s maternal grandmother reported to DCFS that Tyler W. generally spoke well of T.M. and that he had said she loved him and took good care of him. Tyler W., his grandmother said, "fabricates things and if he is asked questions he will just make up lies and unless he is called on it, he will continue to lie." Tyler W. had told her that T.M. spanked him because he could not control himself, but she advised DCFS, "'I hope that everyone takes what Tyler says with a grain of salt. It would be a shame if [T.] was found guilty for something she didn't do. I say this because Tyler loves [T.] and we spoke to his father and his father told the grandfather that he has never hit Tyler and that [T.] has never hit Tyler.'"

Tyler W. reported being happy in his aunt's home and feeling safe there. He did, however, state that there was a gun in a drawer upstairs; that he had put a bullet in the gun; and that his aunt's boyfriend had shot the gun on the aunt's roof. Tyler W. told DCFS that he had witnessed his aunt and her boyfriend fighting: he hit her in the belly, she kneed him in the head, and he tried to shoot her.

Pamela W. reported to DCFS that the incident that led to police and DCFS involvement began when her ex-boyfriend, Kevin G., came over after drinking. Kevin G. had a history of hitting and biting her when he was drunk, and there had been a series of physical altercations between them over the past seven months. One of her adult sons had been the one to hit Kevin G. Kevin G. was in the hospital with multiple life-threatening brain injuries.

Pamela W. reported having major depression, schizophrenia, hallucinations, and hearing voices and denied undergoing treatment in the past two years. She drank alcohol, and had recently used marijuana. She admitted prior history with DCFS in conjunction with one of her children. She stated that she disciplined Tyler W. and her own son by cursing at them and threatening them.

Gregory W. said that he was on the road and did not know about what had happened at Pamela W.'s house. Gregory W. understood that Pamela W.'s adult sons worked in security and had permits to have a gun, although he had disposed of a gun when one of the sons had legal problems. Gregory W. admitted having heard that his sister had mental health problems but denied knowing that she heard voices. He denied that she used illicit drugs.

As far as alternate care plans for Tyler W., Gregory W. told DCFS, "He is with his grandparents and he can stay there for the summertime, he is good with his grandparents so he can get to know them. In a couple of months I plan to establish a residence in Los Angeles."

DCFS had been informed of domestic violence between Gregory W. and T.M., involving T.M. rolling over him with her car. When asked about the incident, Pamela W.

4

told DCFS that T.M. had hit Gregory W. in the head, causing a contusion and a concussion and leading him to go to the hospital.

Gregory W. described a conflict with T.M.: "'[T.] needed to go to [the] store and I had to go to work and I had the keys to both cars. I told her I had to go to work; she jumped in the car and I ran out of the house, asking her, "[W]hy are you taking my car[?] I have to go to work.["] I jumped on the side of the car [running board] on the Ford Explorer and she tried to leave and as I jumped she tried to leave and I missed the board and fell. She didn't try to run over me.'" Gregory W. admitted that he had told his sister that T.M. had hit him in the head, causing a concussion and contusion, but he denied that it had really occurred: "'Yeah[,] I told her that but that really didn't happen. I didn't go to the hospital.'" He explained, "'I just told her that. I didn't get hurt and [T.] didn't cause me no harm.'"

T.M. said that Gregory W. had not wanted her to leave, "'so he started grabbing on my window at first. Then he stood in front of my car, and then when I was taking[ ]off, he jumped on my windshield and I started to move the car. He fell[ ]off and I jumped[ ]out of the car to see about him. I called 911 but he said he was okay so I hung[ ]up.'"

U.W. reported that there had been domestic violence between herself and Gregory W., and that this was one of the reasons she left him. Also, U.W. stated, Gregory W. threatened her after DCFS became involved with Tyler W., believing that she was the one who had contacted DCFS.

Gregory W. denied any domestic abuse in his relationships. He told DCFS that he had been arrested for what he called "'spousal abuse of a girlfriend's friend.'" He said that he had "'grabbed her hand off the door because she wouldn't let me out of a storage place—she was pregnant.'"

Tyler W.'s mother, U.W., had an extensive documented history of substance abuse and of failing to reunify with six other children.

On May 15, 2012, the court sustained the allegations of the amended petition and found that Tyler W. fell within the jurisdiction of the juvenile court. The court ordered

5

Gregory W. to undergo a domestic violence program and parenting education and instructed DCFS to locate programs compatible with Gregory W.'s work travel. Gregory W. appeals.

## DISCUSSION

### I.      Sufficiency of the Evidence for Dependency Jurisdiction

Gregory W. argues that there was insufficient evidence to support the dependency allegations that the court found true concerning his care and plans for Tyler W. Gregory W. does not contest that jurisdiction was proper over Tyler W. based on the court's findings with respect to Tyler W.'s mother.  Although a single basis for jurisdiction is sufficient to uphold the juvenile court's order (*In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1045), Gregory W. argues that the court should address his jurisdictional arguments nonetheless because of their impact on the challenged dispositional orders.  We find that there was sufficient evidence to support dependency jurisdiction.

Gregory W. argues, and County Counsel concedes, that there was no evidentiary basis for a jurisdictional finding under section 300, subdivision (a), because the allegations and evidence of physical abuse all pertained to T.M.  Section 300, subdivision (a) authorizes juvenile court jurisdiction only in the case of serious physical harm inflicted nonaccidentally by the child's parent or guardian.  Because there was no evidence that T.M. was Tyler W.'s parent or guardian, there was insufficient evidence to support dependency jurisdiction under section 300, subdivision (a).

The record, however, contained sufficient evidence to support jurisdiction under section 300, subdivision (b).  There was evidence that Gregory W. had made an inappropriate plan for the care of Tyler W. and that he failed to protect him from harm. Pamela W., with whom Tyler W. had been left, exposed Tyler W. to domestic violence, used drugs, had serious and untreated mental health problems, and had a firearm to which Tyler W. had access in her home.  There was also evidence that T.M. had abused Tyler W. by hitting him with a belt.  Although Gregory W. and T.M. denied this had occurred

6

and Tyler W.'s grandmother questioned Tyler W.'s veracity, the trial court accepted the evidence as true. We cannot second-guess the court's determination of the credibility of witnesses and its resolution of factual conflicts. (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.) At least two of the jurisdictional findings involving Gregory W.'s conduct were supported by the evidence. Accordingly, dependency jurisdiction was appropriate under section 300, subdivision (b) based on Gregory W.'s conduct as well as that of U.W.

## II.    Dispositional Orders

Gregory W. argues that the dispositional orders were not supported by substantial evidence because there was no substantial danger to Tyler's physical health, safety, protection or emotional well-being if he was returned to his father's care. This argument is based on Gregory W.'s contention that he neither harmed Tyler W. nor exposed him to any risk of harm, but as we have already discussed, substantial evidence supported the court's finding that Gregory W. exposed Tyler W. to a risk of physical harm. Moreover, Gregory W. acknowledged his inability to care personally for Tyler W. at the time of the proceedings: he told DCFS that he was planning to establish a residence in Los Angeles in "a couple of months," and until then, he thought Tyler W. was "good with his grandparents." The evidence was sufficient to support the court's determination by clear and convincing evidence that returning Tyler W. to Gregory W. would present a substantial danger to his physical health, safety, protection, or physical or emotional well-being, and that there were no reasonable means to protect Tyler W. without removing him from Gregory W.'s custody. (§ 361, subd. (c)(1).)

Gregory W. also argues that the orders that he complete parenting education, individual counseling, and a domestic violence program were an abuse of discretion. We first note that Gregory W. was not ordered to undergo individual counseling, only parenting education and a domestic violence program. Gregory W. contends that the dispositional orders should be stricken because the jurisdictional findings were not supported by substantial evidence, but this argument fails due to our contrary conclusion about the jurisdictional findings.

Finally, Gregory W. contends that the reunification plan was an abuse of discretion because it was not designed to eliminate the conditions that led to the dependency proceeding.  "The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.  On appeal, this determination cannot be reversed absent a clear abuse of discretion."  (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.)  Gregory W. had failed to make a care plan for his son that ensured his safety and there was also evidence that he had been involved in domestic violence with both his present girlfriend and Tyler W.'s mother.  Requiring Gregory W. to complete parenting education and to undergo a domestic violence program was reasonable in light of the circumstances of the case and fell well within the court's broad discretion to determine what would best serve and protect Tyler W.'s interests.

## DISPOSITION

The juvenile court's orders are affirmed.


                                            ZELON, J.

We concur:



PERLUSS, P. J.



WOODS, J.


8