Filed 12/21/15  In re A.O. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re A.O., et al., Persons Coming Under the Juvenile Court Law. | B261557 |
| | (Los Angeles County Super. Ct. No. DK04263) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| LATONYA W., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Principal Deputy County Counsel for Plaintiff and Respondent.

_____

Latonya W. appeals the jurisdictional findings of the juvenile court. We find that sufficient evidence supported the court's finding of a failure to protect under Welfare and Institutions Code[1] section 300, subdivision (b), and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Married couple Latonya W. and K.C. have one child together, K.C., Jr., who was born in 2011. Latonya W. also has an older child, A.O., whose father is Ronnie O. As of January 2014, K.C., Latonya W., and the two children lived together. K.C. had two other children, Morgan G. and Bianca M., who resided with their respective mothers, Rachael G. and Rachel M.

In January 2014, the Department of Children and Family Services received a report of domestic violence by K.C. against Latonya W.; abuse of Morgan G. by paternal relatives; and threats by K.C. of physical violence to Rachael G. in the presence of Morgan G. During initial investigations, five-year-old A.O. confirmed that K.C. hit Latonya W. and also reported that Latonya W. had "whoop[ed]" A.O. with a shoe on her hand. Rachel M. also disclosed to DCFS that once K.C. learned of her contact with DCFS, he attempted to rape her.

DCFS filed a petition in March 2014 alleging that A.O. and K.C., Jr. came within the jurisdiction of the juvenile court under section 300, subdivisions (a) [serious physical harm], (b) [failure to protect], and (j) [abuse of sibling]. In July 2014, DCFS filed a first amended petition to add allegations that K.C. had sexually assaulted Rachel M., endangering the children.

### A. Evidence Presented at the Adjudication of the Dependency Petition

The juvenile court conducted a contested adjudication hearing between October 2014 and January 2015 and received documentary and testimonial evidence.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

2

1. Written Reports

    a. Detention Report, March 2014

In January 2014 DCFS received a report that K.C. had choked Latonya W.; that Rachel M. and Rachael G. knew K.C. was abusing Latonya W.; that Rachael G. had been abused when she was with K.C.; that paternal relatives had hit Morgan G. repeatedly, and that one of these hits resulted in a bump on her head; that K.C. yelled at Morgan G., spoke badly about her mother to her, and used vulgar language in front of her; that Morgan G. cried before visits with K.C. and had become sad and depressed; and that at an exchange of Morgan G. between her parents, K.C. had threatened Rachael G., frightening Morgan G. so much that she soiled herself.

A.O. told DCFS that when K.C. and Latonya W. became upset, he would hurt Latonya W., who would cry a lot. She disclosed that K.C. hit Latonya W. on the head and demonstrated a hitting action to the head with a closed fist. She also said that K.C. pushed Latonya W., but did not know when. A.O. said that when she was in trouble, Latonya W. "whoop[ed]" her with a shoe on her hand. Neither A.O. or K.C., Jr., who was too young to make a statement, bore visible signs of abuse.

K.C. denied the allegations of abuse and alleged that they were lies formulated by Rachael G. to aid her in a custody dispute. He admitted to being detained by police in 2007 for domestic violence against Rachael G., but maintained that she was the aggressor. He denied abusing Rachel M. K.C. said that he and Latonya W. were not living together.

Latonya W. denied that K.C. had committed domestic violence against her. She said that A.O.'s statement that K.C. hit her was not true Latonya W. denied that her children had ever had marks or bruises and did not believe that K.C.'s family had hit the children. Latonya W. admitted that she spanked A.O. with her hands once in a while but denied leaving marks on her.

Rachel M. told DCFS that once, when she contacted K.C., she could hear Latonya W. gasping for air; she believed that K.C. had choked Latonya W. Rachel M.

3

told DCFS that K.C. had choked and hit her once, and described him as aggressive toward her on numerous occasions: pushing her, invading her personal space, and grabbing her when they argued. Rachel M. also reported that in late January 2014, after he learned that she had been in contact with DCFS, K.C. pushed his way into her home and attempted to rape her.

Morgan G. told DCFS that K.C. and Latonya W. sometimes fought in front of the children. Morgan G. said, "I seen them fight with their hands." She described K.C. "smash[ing]" Latonya W. into the door and punching her in the stomach and lower abdomen. Morgan G. said that when K.C. and Latonya W. fought in front of the children, they would go into the bedroom. Morgan G. felt scared after seeing her father hit Latonya W.

In late February, Latonya W. and K.C. refused to permit DCFS to interview A.O. in private. When the social worker asked her about school, A.O. whispered, "My momma said to not talk about our business." A.O. avoided eye contact with the social worker, appeared uncomfortable, and repeatedly looked at her mother during the conversation.

Latonya W. told DCFS that things were going well and denied any domestic violence. Latonya W. said K.C. was upset because the allegations were false and there was no domestic violence in the home. K.C. said "everything" was false and that he did not understand why the investigation was still open. The social worker asked if they would enroll in domestic violence classes. They refused, saying they did not have any issues with domestic violence. K.C. also denied Rachel M.'s sexual assault claims.

A few days later, Latonya W. told DCFS that K.C. was not a violent person and was not angry toward her. She stated that they "get along great" and had a good marriage. Latonya W. blamed the DCFS referral on Rachael G. and Rachel M..

On March 13, 2014, the juvenile court authorized DCFS to remove A.O. from Latonya W. and K.C., Jr. from Latonya W. and K.C.

b.  Last Minute Information for the Court, April 22, 2014

In April 2014, Latonya W. told DCFS that there was no evidence from a medical professional diagnosing any physical abuse of A.O. or K.C., Jr.  She again accused Rachael G. and Rachel M. of making false allegations and blamed them for the children being detained.  She advised DCFS that Rachael G. had previously alleged that Latonya W. abused Morgan G. in November 2013.

DCFS had received evidence that K.C. and Rachel M. recently had obtained mutual restraining orders and that in 2009 K.C. had completed a batterers' program.

c.  Jurisdiction/Disposition Report, April 29, 2014

A.O. was detained and released to her father, Ronnie O., and K.C., Jr. was placed in shelter care.

In April 2014, DCFS spoke with A.O and found she was not able to tell the difference between telling a truth and telling a lie.  A.O. denied that K.C. and Latonya W. fought in her presence or that her mother had hit her or K.C., Jr.

Both Latonya W. and K.C. denied that K.C. was violent with Latonya W., choked her or hit her in the stomach with his fists.  They denied that K.C. threw Latonya W. against a door in A.O.'s presence.  Latonya W. stated that she disciplined A.O. by talking to her and by "hitting her with an open hand on the butt 3 times leaving no marks or bruises in March 2014."  Latonya W. admitted hitting A.O. on the bottom with a shoe three times, leaving no marks, in January 2014.

K.C. denied hitting A.O. or Morgan G.  Latonya W. said that K.C. had once hit A.O. on the bottom and hand with an open hand, leaving no marks or bruises.  Latonya W. denied disciplining or hitting Morgan G.  Both K.C. and Latonya W. denied that the other had hit Morgan G.

Both Latonya W. and K.C. wanted to reunify with their family.  Latonya W. said she loved K.C., and K.C. said they were still together.

d. Last Minute Information for the Court, July 14, 2014

The Los Angeles Sheriff's Department confirmed an active criminal investigation of K.C. for the sexual battery of Rachel M. DCFS had received a police report from 2008 relating to K.C.'s violation of Rachael G.'s restraining order; a police report from 2011 stating that K.C. had pushed Rachel M. in the face and thrown a bowl of food at her; and a police report that K.C. had made in 2013 in which he alleged that Rachael G. had violated a court custody and visitation order.

K.C. and Latonya W. confirmed in June 2014 that they were living together. Latonya W. and K.C. each completed parenting skills and anger management classes. Each attended classes concerning domestic violence and began individual counseling.

e. Last Minute Information for the Court, October 29, 2014

Latonya W.'s visits with the children had been liberalized to unmonitored as of September 2014. K.C.'s visits were monitored.

Latonya W. completed her domestic violence program in September 2014. K.C. completed his domestic violence program after attending 20 sessions.

DCFS had received letters from a counseling center concerning domestic violence assessments performed on K.C. and Latonya W. Neither K.C. nor Latonya W. had obtained counseling from the center, which had a delinquent license and was not DCFS-approved.

f. Last Minute Information for the Court, January 6, 2015

The district attorney closed the sexual battery case involving K.C. and Rachel M. without filing charges. In December 2014, K.C. signed a stipulation for a restraining order and finding of abuse with respect to Rachel M. The stipulation provided, "The parties agree herein that for purposes of the [F]amily [C]ode, with particular attention to Family Code [section] 3044, this agreement is **tantamount** to a judicial finding that Ms. M[.] **has** met her burden of proof, by a preponderance of the evidence, that there has been at least one act of 'abuse' perpetrated by Mr. C[.], as defined in Family Code [section] 6203." K.C. and Rachel M. stipulated that Rachel M. would maintain sole legal and

6

physical custody of Bianca M. with no visitation for K.C. The stipulation was signed by K.C., Rachel M., their attorneys, and the court.

### 2. Testimony

#### a. Morgan G.

Morgan G., age seven, testified that she had seen K.C. and Latonya W. yelling at each other; that K.C. pushed and hit Latonya W., and pushed a door to hold her back from entering a room. She testified that A.O. and K.C., Jr. had also been present when this happened. Morgan G. testified that this had happened "a lot," and that K.C. and Latonya W. fought by "putting their hands on each other." She also testified that her father had once hit her and A.O. on the arms with a belt because they were too loud.

#### b. Latonya W.

Latonya W. denied that K.C. hit or pushed her in front of the children in 2013 or 2014. She denied that he had choked her in 2014. She had taken a domestic violence class, but there had never been domestic violence between herself and K.C., and neither he nor she had an anger problem. Latonya W. testified that Morgan G. was not telling the truth. Latonya W. also testified that A.O. did not witness K.C. putting his hands on her.

Latonya W. hit A.O. on the bottom with a slipper three or four times in January 2014, causing her to cry. It did not leave marks. Latonya W. had since learned different forms of discipline from parenting class. She had not physically disciplined her children since.

Latonya W. testified that K.C. was out of the home in early January 2014, but that he had been back in the home since shortly thereafter.

#### c. K.C.

K.C. testified he did not have a temper and there was no domestic violence in his marriage. He had attended domestic violence class and parenting class. He had learned that Latonya W. disciplined A.O. with a slipper and he opined that it was appropriate.

After further questioning, he said that he thought that it "probably" would not be appropriate for Latonya W. to discipline A.O. that way now.

K.C. was questioned about violence against the mothers of his other children. K.C. testified that Rachel M. called him in January seeking help when she had car trouble, and he stated that there was no argument or domestic violence between them that evening. He first testified that there was no violence or threats on Rachel M.'s part following that incident, but when reminded of the declaration he had filed in response to Rachel M.'s application for a restraining order, he testified that she had threatened him. He could not remember what the threats were. K.C. denied knowing about the police report filed in 2011 by Rachel M. alleging that he pushed her and threw food at her. He did not recall that incident and stated that the information in the police report was false.

K.C. testified that there had been no domestic violence between himself and Rachel M. When asked again about the declaration he had filed in response to her application for a restraining order, he clarified that he had not been violent to Rachel M. but "[s]he has done things toward me before." Rachel M. had hit him, stalked him, and bitten him, and she had fabricated all the allegations of domestic violence. Rachel M. had accused Latonya W. of abusing his daughter Bianca M. in November 2013. K.C. admitted going to Rachel M.'s home but denied trying to rape her. He had signed a document in December 2014 in which he stipulated to a finding that he had abused Rachel M. but he understood it to be a mutual stay away order.

K.C. acknowledged his domestic violence conviction in 2007 but claimed never to have been violent with Rachael G. Instead, he testified, Rachael G. had been violent with him. In May 2007 she had attacked, scratched, and bitten him. Rachael G. had alleged that he was violent with her during custody exchanges at the sheriff's station.

K.C. testified that he underwent a 52-week domestic violence program after his 2007 domestic violence conviction and that he attended 20 more classes after DCFS became involved with his family.

8

### d. Rachel M.

Rachel M. testified that K.C. had been violent with her five or six times. Three or four times a child had been present when he hit her. K.C. had choked her and hit her in the face. She had reported him to the police three times. Rachel M. testified that in June 2011 she called the police because K.C. was abusing her, had thrown food at her and pushed her, and would not permit her or her children to leave the house. She stated that K.C. had forced his way into her home in January 2014, pushed or pulled her to the floor, and pinned her down. He began to sexually assault her, stopping only because a car began honking insistently; K.C. had parked his car in a neighbor's parking spot.

Rachel M. also testified that she had received a telephone call from Latonya W.'s telephone number, but that when she answered the telephone, she could only hear sounds of struggle and a person gasping for air. Rachel M. thought it sounded like Latonya W. was being choked.

### e. Sabrina S.

K.C.'s mother Sabrina S. testified that her relationship with Rachel M. had been good until Rachel M. and K.C. became involved in a custody battle. In the past Rachel M. talked with her about K.C. and said that he was going to leave his wife for her. When Sabrina S. served Rachel M. with legal papers in February 2014 they had a verbal exchange in which Rachel M. said that she would "fuck him [K.C.] again." Sabrina S. stated that Rachel M. told her of the attempted rape the same night it happened, but that her tone of voice sounded normal and she did not sound distressed or angry. Sabrina S. also testified that Rachel M. said she got a restraining order against K.C. because DCFS told her to do so.

Sabrina S. testified that Morgan G. had never expressed fear of her father or described witnessing fights between K.C. and Latonya W. Sabrina S. denied awareness of any domestic violence by K.C. in the prior 10 years.

9

### f. Rachael G.

Rachael G. testified that Morgan G. had told her that her father hit his girlfriend and that some paternal relatives had hit her with a cord. Rachael G. said that Morgan G. had said that she was told by her father and other paternal relatives not to report occurrences at K.C.'s home. Rachael G. said that Morgan G. reported that her father "whooped" her once because she was in a closet and that he had "whooped" both Morgan G. and A.O. with a belt because they were not quiet at night. Rachael G. believed her daughter because she had once heard K.C. apologizing to Morgan G. for "whooping" her.

Rachael G. testified that there had been multiple acts of domestic violence during her relationship with K.C. In 2007 she was arrested because K.C. falsely claimed she had assaulted him; she was never charged. K.C. ultimately was charged with assault. He was also charged for an incident later in 2007. She obtained a restraining order against K.C. in 2007 and called the police in 2008 because he had violated it. Rachael G. confirmed that she had obtained a temporary restraining order against K.C. in 2011 because he was threatening her, but that the judge had declined to make the order permanent because the judge believed the issue to be custodial.

### g. A.O. and Noah R.

A.O. was called as a witness but the court concluded she was not competent to testify.

Noah R., Rachel M.'s son and Bianca M.'s half-brother, testified that he had seen K.C. hit Rachel M. Noah R. said that he heard them arguing and Rachel M. told K.C. to leave her home, but K.C. did not leave. K.C. hit Rachel M. in the shoulder. Rachel M. told Noah R. to call 911, but K.C. took the phone and took the batteries out. K.C. "talk[ed] angry" to Rachel M.

### h. Tommy Brown

DCFS social worker Tommy Brown testified that he had recommended that Latonya W. enroll in parenting class, a domestic violence program, individual

counseling, sexual abuse counseling, and anger management. He understood that Latonya W. had completed a domestic violence program and that the program provider had no concerns that she had failed to grasp the concepts presented. Brown also understood that Latonya W. had undergone individual therapy and that the provider was satisfied with her progress, and that she had successfully completed a parenting class. Brown testified that he did not have any concerns as to whether she understood appropriate discipline, but that he was concerned about whether she understood the cycle of domestic violence. Brown's concerns arose from the fact that A.O. had disclosed that K.C. hit Latonya W. but that Latonya W. had never admitted it.

Brown testified that Latonya W.'s visits with A.O. and K.C., Jr. had been liberalized to unmonitored on the condition that K.C. not be present during visits. There had been no reports that Latonya W. permitted K.C. to be present during visits. There had been no negative reports about Latonya W.'s visits, and Brown had no concerns about the children's safety or about inappropriate discipline during visits.

Brown testified that A.O. had told him in April 2014 that K.C. had hit Latonya W. in the stomach and made her cry. Brown had not assessed A.O.'s competency before speaking with her about this, but he had observed her behavior and demeanor.

B. Adjudication, Disposition, and Appeal

After the close of evidence and argument, the juvenile court explained that it found incredible K.C.'s explanation that he did not know what he was signing when he stipulated to abusing Rachel M., and that this impacted his credibility overall. The court expressed concerns about Latonya W.: "I do find that it's concerning that the mother Miss W[.] here has denied any domestic violence with respect to the father C[.] especially considering what appears to be his history with others . . . ." The court observed that Morgan G. "has consistently stated that she has witnessed father C[.] striking Miss W[.] Now, it lea[ds] me to ask whether mother is protecting Mr. C[.], or is mother in denial or is mother and Mr. C[.] being honest with the court? [¶] Now, I've already stated that Mr. C[.]'s credibility seems to be questionable. So this then puts mother's credibility at

11

issue. In weighing credibility, I . . . give more weight to the consistent statements made of the minor here in this case[,] Morgan[,] who seems to have had an unfettered and somewhat uncomplicated way of perceiving what she saw and what she experienced in stating it."

The court considered Morgan G.'s testimony with that of Noah R., who described the interaction between K.C. and Rachel M. that "seemed to have led to the stipulated order that Mr. C[.] signed[,] at least in part." The court refused to disregard K.C.'s stipulation to abusing Rachel M. The court said, "I don't know if mother is in denial with the d[omestic] v[iolence] incidents that Morgan reported, and County Counsel is making an argument that mother is either in denial or she is unable or unwilling to protect the children[,] which raises another issue." The juvenile court noted that Latonya W. had admitted hitting A.O. with a shoe.

The court sustained two allegations of the first amended petition as amended. First, under section 300, subdivisions (a) and (b), the court found true that in 2013 K.C. and Latonya W. engaged in violent altercations in which K.C. struck her in the stomach with his fists and threw her against the door, all in A.O.'s presence; that Latonya W. failed to protect the children because she allowed K.C. to reside in the home and to have unlimited access to the children; and that the violence by K.C. and failure to protect by Latonya W. endangered the children's physical safety and placed them at risk of physical harm, damage, danger, and failure to protect. Second, under section 300, subdivisions (a), (b), and (j), the court found true that Latonya W. had physically abused A.O. by striking her with a shoe; that the abuse was excessive and caused A.O. unreasonable pain and suffering; and that it endangered her health, safety and well-being, created a detrimental home environment, and placed K.C., Jr. at risk of physical harm, damage, and physical abuse. The court declared A.O. and K.C., Jr. dependents of the court under section 300, subdivisions (a) and (b). A.O. was ordered placed in "home of parents" under DCFS supervision, and K.C., Jr. was ordered "home of parent-mother," with K.C. barred from living in the home.

12

Both parents appealed.  K.C.'s appeal was dismissed as abandoned.  (*In re Phoenix H.* (2009) 47 Cal.4th 835, 838.)  Latonya W.'s appeal remains.[2]

## DISCUSSION

On appeal, Latonya W. attacks each of the juvenile court's jurisdictional findings concerning her conduct.  She first contends that there was insufficient evidence to support the court's findings under section 300, subdivisions (a), (b), and (j) that she had seriously physically abused A.O. or that A.O. and K.C., Jr., were at risk of serious physical abuse by her.  Next, she argues that the juvenile court erred in finding that she had failed to protect the children from domestic violence under section 300, subdivision (a) because a failure to protect finding is inappropriate under that provision.  Finally, she argues that the juvenile court erred in finding that she had failed to protect the children under section 300, subdivision (b) because at the time of the jurisdictional hearing there was no evidence to support a conclusion that the children were then at risk.  We conclude that the evidence was sufficient to support a finding under section 300, subdivision (b) that Latonya W. failed to protect the children, and that this basis for jurisdiction is sufficient to uphold the court's order.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)  Substantial evidence is "evidence which is reasonable in nature, credible, and of solid value."  (*Ibid.*)  Under this standard of review, we examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses.  (*In re Tania S*. (1992) 5 Cal.App.4th 728, 733.)  We determine only whether there is any substantial evidence, contradicted or uncontradicted, that supports the juvenile court's order, resolving all conflicts in support of the

---

[2]     At a progress hearing in February 2015 the case was transferred from the Los Angeles Superior Court to the Juvenile Court of Sacramento County.  Notwithstanding that transfer, jurisdiction to consider Latonya W.'s appeal from the Los Angeles juvenile court's order remains in this court.  (*In re Lisa E.* (1986) 188 Cal.App.3d 399, 404-405.)

13

determination and indulging all legitimate inferences to uphold the lower court's ruling. (*In re John V*. (1992) 5 Cal.App.4th 1201, 1212.)

Section 300, subdivision (b) provides that a child comes within the jurisdiction of the juvenile court if the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child or provide adequate medical treatment. Children's exposure to domestic violence is a sufficient basis for jurisdiction under section 300, subdivision (b). (*In re Heather A*. (1996) 52 Cal.App.4th 183, 194.)

Here, there was substantial evidence to support the juvenile court's finding under section 300, subdivision (b) that A.O. and K.C., Jr. had been exposed to domestic violence and that Latonya W. had failed to protect them from exposure to violence. Morgan G. testified that K.C. pushed and hit Latonya W. in the presence of A.O. and K.C., Jr. Morgan G. testified that the domestic violence had happened many times and that K.C. and Latonya W. fought by "putting their hands on each other."

Latonya W., however, argues that because she had successfully completed her case plan, there was no evidence at the time of the jurisdictional and dispositional hearing to permit a finding of current risk to the children. While Latonya W. had completed the recommended services and there had been no negative reports from her visits or programs, she steadfastly denied that there had been any domestic violence between herself and K.C. She and K.C. also remained a couple and lived together for the duration of the dependency proceedings. Latonya W.'s denial of domestic violence despite her participation in domestic violence programs, in combination with the continuation of her relationship as a couple with K.C., was sufficient for the juvenile court to conclude that the children remained at risk of being exposed to domestic violence. (*In re Esmeralda E.* (1992) 11 Cal.App.4th 1036, 1044 [parent's denial is a relevant factor in determining whether parent is likely to modify his behavior]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)

14

Latonya W. also points to the fact that the juvenile court returned the children to her at disposition with family maintenance services on the condition that K.C. not reside in the home and that she not permit him to have unmonitored contact with them as "even more substantiat[ion]" that there was no risk to the children by the time of the jurisdictional hearing. The requirements for removal and for jurisdiction, however, are not interchangeable. A finding that a child is described by section 300 requires proof by a preponderance of the evidence. (§ 355, subd. (a).) Removal of children from the home under section 361, subdivision (c) requires findings under a clear and convincing evidence standard that there is a substantial risk of detriment to the children and no reasonable means to protect the children other than removal. The fact that the court did not remove the children does not tend to undermine its findings that by a preponderance of the evidence the children were at substantial risk of suffering serious physical harm as a result of Latonya W.'s failure to protect them. (§ 300, subd. (b).) Latonya W. has not established any error in the court's finding that the children came within the jurisdiction of the juvenile court under section 300, subdivision (b) due to Latonya W.'s failure to protect them from domestic violence.

Because the juvenile court's findings under section 300, subdivision (b) are supported by substantial evidence and establish that the court properly exercised jurisdiction over the children, we need not consider Latonya W.'s challenges to the other sustained allegations. (*In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1045 [single basis for jurisdiction is sufficient to uphold juvenile court's order]; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 [when one jurisdictional finding is supported by substantial evidence, appellate court need not consider sufficiency of evidence to support other findings].)

15

## DISPOSITION

The judgment is affirmed.


                                        ZELON, Acting P. J.

We concur:


        SEGAL, J.


        BECKLOFF, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.