Filed 7/31/13  In re Juan M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JUAN M., Jr., et al., Persons Coming Under the Juvenile Court Law. | B244512 |
| | (Los Angeles County Super. Ct. No. CK74904) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Appellant, | |
| v. | |
| JUAN M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry T. Truong, Referee.  Affirmed.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Appellant.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

_____

**INTRODUCTION**

This is a juvenile dependency case involving minors Juan M. Jr. (Juan) and Juanita M. (Juanita). Los Angeles County Department of Children and Family Services (the Department) filed a juvenile dependency petition alleging that the juvenile court had jurisdiction over the children under Welfare and Institutions Code section 300, subdivisions (a) [serious physical harm inflicted nonaccidentally], (b) [failure to protect] and (j) [abuse of sibling].[1]

In its jurisdictional and dispositional order, the juvenile court dismissed the section 300, subdivision (a) and section 300, subdivision (j) allegations and sustained three of the four counts under section 300, subdivision (b). The court also declared the children dependents of the court and removed physical custody of the children from Juan M., Sr. (father).

Father appeals the order on the ground that there was no substantial evidence supporting the juvenile court's assertion of jurisdiction under section 300, subdivision (b). He also contends that there was no substantial evidence supporting the juvenile order's disposition. The Department appeals the order on the ground that the juvenile court erroneously dismissed its section 300, subdivision (a) allegations. We affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.   *Father and Mother's Custody and Care of the Children Before this Action Commenced*

Juan and Juanita were 10 and 8 years old, respectively, when this action commenced. Their biological mother is Felicia H. (mother), who is not a party to this appeal. Juan M., Sr. is the children's presumed father. Mother and father were never married.

---

[1]   All future statutory references are to the Welfare and Institutions Code.

Between August 2005 and February 2011,the Department received 14 referrals regarding father or mother's alleged physical abuse, emotional abuse, or neglect of Juan and Juanita. Seven of the referrals were regarding father's alleged misconduct, two of which involved alleged physical abuse. The Department investigated each referral and in all but one case found that the allegations were unfounded or that its investigation was inconclusive. An October 2008 referral alleging neglect by mother and physical abuse by the children's maternal grandmother was "substantiated." The juvenile dependency case arising from this referral was open from October 2008 to March 2010.

On March 15, 2010, the juvenile court issued an order granting father and mother joint legal custody of the children. The order also granted each parent physical custody of the children on alternate weeks.

On December 9, 2011, the court issued an order temporarily modifying the custody order (temporary order). The temporary order limited mother's physical custody of the children to the second and fourth weekend of each month. On June 15, 2012, the court issued another order (permanent custody order) making the provisions of the temporary order permanent, subject of course to modification by the court should the circumstances warrant it.

Shortly after the court issued the permanent custody order, mother declined to return the children to father's physical custody. Mother claims that she disobeyed the order because "the children stated they did not want to go back with their father."

On July 7, 2012, mother and the children were evicted from maternal grandmother's house. Mother then took the children to the Union Rescue Mission (the shelter).

2.     *The Detention of the Children*

The Department's investigation which led to this case began on July 11, 2012. A Department social worker was told by employees of the shelter that mother was neglecting the children. Mother allegedly allowed Juan to walk unsupervised in the "skid row" area near the shelter. In response to the Department's inquiry about this matter, mother stated that she was "not going to chase after [Juan] every time he took off." She

3

further stated that she was "tired of preaching and teaching the children," and that "God will teach those who do badly and they will be punished by accidents or make the children fall down."

The Department interviewed various people regarding mother's alleged neglect, including Juan and Juanita. In the course of those interviews, the Department discovered that the children had allegedly suffered from physical abuse by father.

Juan stated that he and Juanita asked mother not to return them to father's custody because father was "mean." According to Juan, father hit him in the head with his fist and choked him. Although Juan suffered no marks or bruises as a result of the abuse, he felt pain for about 30 seconds after father hit him. Juan stated that he was afraid of father and did not feel safe with him. Juan further stated that father last physically abused him in June 2012. He also stated that father once put a sock in Juanita's mouth while father spanked her.

Juanita stated that father gave the children "whoppings" when they misbehaved or did not follow his rules. She confirmed that father hit Juan in the head with his fist and that in April or May 2012, father put a sock in her mouth so she would not yell when he was giving her a "whooping." Juanita stated that father hit her with his hand or a belt.

Father admitted to spanking the children with an open hand on their buttocks, but denied the children's other allegations regarding his physical discipline. He also stated that he usually disciplined the children by making them write "standards," and by taking away privileges.

At first, the Department attempted to assist mother retain custody of the children without filing a juvenile dependency petition. After receiving additional complaints about mother's lack of supervision of the children by the shelter's staff, however, the Department determined that the children needed to be detained.

Before removing the children from mother's physical custody, the Department asked Juan and Juanita whether they preferred living in foster care or with father. Both children stated they preferred foster care. On or about July 20, 2012, Juan and Juanita were temporarily placed in the care of a foster mother.

4

The Department's initial investigation was summarized in a detention report dated July 25, 2012. This report would later be admitted into evidence by the juvenile court.

3. *The Petition and Initial Order*

On July 25, 2012, the Department filed a juvenile dependency petition requesting the juvenile court to assert jurisdiction over Juan and Juanita under section 300, subdivisions (a), (b) and (j). Counts a-1, a-2, b-1, b-2, j-1 and j-2 were based on father's alleged physical abuse of the children. Count b-3 was based on mother's alleged failure to supervise the children at the shelter. Count b-4 was based on mother's alleged mental and emotional problems.

On the same day the petition was filed, the juvenile court issued an order stating that it found a prima facie case for detaining the children. The order also required the Department to provide mother and father with family reunification services and to permit father and mother to have monitored visits with the children of no less than four hours per week.

4. *DCFS Reports Prior to the Jurisdictional and Dispositional Hearing*

In addition to the detention report, the record includes a jurisdiction/disposition report, a multidisciplinary assessment team report, two documents entitled "Last Minute Information for the Court", and various documents attached to these reports. These documents, all of which were admitted into evidence, indicate the following.

a. *Additional Interviews Regarding Father's Alleged Physical Abuse*

On August 3, 2012, a Department social worker interviewed Juan and Juanita regarding various matters, including father's alleged physical abuse. Juan reiterated that father hit him on the head with his fist and choked him. Juan also stated that on one occasion father picked up a hammer and threatened to hit him with it. He further stated: "I don't remember when these things happened, but they did happen."

Juanita stated that father hit Juan on the head and choked him. She also said that father spanked her with his hand, but denied that father hit her with a belt. With respect to the allegation that father put a sock in her mouth, Juanita stated: "He said that he would do it, but he never did."

5

The Department also interviewed father on August 7, 2012.  Father denied the Department's allegation that he physically abused the children and claimed that mother was coaching the children to make false claims.

b.    *Foster Care for the Children and Father's Visits*

After the children were detained, they received foster care in at least four different homes.  From July 20 to August 6, 2012, they lived with foster mother Martha W.  According to Martha, father was often "aggressive and commanding in his communication style toward her."  Martha requested the children be placed in another home because Juan was "very disrespectful to her and she had difficulty communicating with [father]."

From August 6 to August 24, 2012, the children lived with Lucy R.  According to Lucy, Juan had behavioral problems and was oppositional.  Lucy also stated to the Department that father "was commanding, aggressive, and challenging in his tone of voice."  Lucy requested that the children be placed in another home because she had a difficult time communicating with father and mother.

From August 24 to September 13, 2012, the children were placed in the home of foster parents Alfredo and Hilda T.  These foster parents did not report any problems with the children's behavior or with communicating with father.

On September 13, 2012, Juan and Juanita were placed with foster parents Donald and Alma S.  These foster parents stated that after father talked to the children through a bedroom window, Juan became upset and difficult to control.  They also told the Department that father's "tone of speech was aggressive and argumentative."  Ultimately, Donald and Alma informed the Department that "due to [father's] aggressive demeanor and demanding tone of speech they are no longer willing to monitor [father's] visits in their home."

Father also had conflicts with Department social workers regarding his visits with the children.  For example, in late September and early October 2012, father and the Department had a difficult time scheduling father's visit with the children.   On October

1, 2012, father "became irate and said that [Department employees] are going to make him hurt someone and end up in jail where he will never get his kids back."

5. *October 3, 2012, Hearing and Order*

The juvenile court held a jurisdictional and dispositional hearing on October 3, 2012. Juanita and Juan testified at the hearing.

Juanita acknowledged that she told a social worker that she did not want to live with father because he was "mean." She also stated: "I said that, but I really want to live with my father."

Juanita retracted or minimized her previous statements regarding father's alleged physical abuse. She said: "I don't really remember him hitting me with a belt, but, like, I don't really know. I think he did." She further stated that father hit her with a belt when she was five and six years old, but not since then. Juanita admitted that father spanked her on the buttocks but claimed that he did so only two times. She denied that father put a sock in her mouth while he was spanking her, and claimed that he only threatened to do so the next time he spanked her.

With respect to Juan, Juanita denied father hit him with his fist on the head. Instead, Juanita claimed, father hit Juan on his buttocks with his hand or a belt. Juanita further stated: "Sometimes he [father], like, he gets mad, really mad, and he lets his anger out by choking [Juan]." Juanita claimed that the last time father choked Juan was "last summer," not in 2012.

Juan testified that father was "mean" because he hits and chokes Juan. According to Juan, father hit him on the head and back with his fist and choked him about three times a week. Juan did not remember the last time father hit him. He claimed that the last time father choked him was "last year." Juan also stated that father threatened to hit Juan with a hammer. Juan further testified that after he told mother that father was hitting him, father told Juan not to talk about his "business" with others. With respect to Juanita, Juan said she told him that father hit her with a belt and covered her mouth with a sock.

7

At end of the hearing, the juvenile court orally announced its disposition from the bench and shortly thereafter issued a minute order dated October 3, 2012. The court dismissed the section 300, subdivision (a) and section 300 subdivision (j) allegations. These allegations were based on father's alleged inappropriate physical discipline of the children. Counts a-1 and a-2 alleged that father's physical discipline caused Juan and Juanita "unreasonable pain and suffering." The court also dismissed count b-4, which related to mother's alleged mental and emotional problems.

Additionally, the court amended the first three section 300, subdivision (b) counts and, as amended, sustained the allegations. Counts b-1[2] and b-2[3] related to father's alleged inappropriate physical discipline of the children and count b-3 related to mother's alleged failure to supervise the children.

The court declared Juan and Juanita dependent children of the court. It further found by clear and convincing evidence that there was a substantial danger to children's health, safety and physical and emotional well-being if they were returned to the physical custody of the parents, and that there were no reasonable means by which their physical health could be protected without removing them from both parents' physical custody.[4]

---

[2]    Count b-1 stated: "On prior occasions . . . father . . . inappropriately physically disciplined the child Juan in that the father choked the child and struck the child's head with the father[']s fists. On a prior occasion, the father also threatened to harm the child Juan with a hammer. The father's inappropriate physical discipline of the child endangers the child's physical health and safety and places the child Juan and the child's sibling Juanita at risk of harm."

[3]    Count b-2 stated: "On prior occasions, . . . father . . . inappropriately physically disciplined the child Juanita by striking the child with his hands and a belt. The father's inappropriate physical discipline of the child endangers the child's physical health and safety and places the child Juanita and the child's sibling Juan at risk of harm."

[4]    From its findings it is obvious the juvenile court removed the children pursuant to section 361, subdivision (c)(1), which we shall discuss *post*. The minute order, however, erroneously refers to section 361, subdivision (b) We have observed this same erroneous reference to section 361, subdivision (b) in the juvenile court's minute orders in many other cases. We urge the juvenile court to correct this error.

8

The court thus ordered that the Department retain physical custody of the children for suitable placement.

The juvenile court also ordered the Department to provide family reunification services to mother and father. The court ordered father to take courses in anger management and parenting, and to participate in individual counseling and conjoint counseling with the children.

Father and the Department both filed timely notices of appeal of the juvenile court's October 2, 2012, order. Mother did not appeal.

## DISCUSSION

1.     *There Was Substantial Evidence Supporting the Juvenile Court's Jurisdictional Order*

We review the juvenile court's jurisdictional findings under the substantial evidence test. (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) In determining whether there is substantial evidence, " ' "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773, citing *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

We do not consider whether there is a substantial conflict of the evidence. Rather, we must consider whether there is substantial evidence *in favor of the respondent*. (*In re Stephen W.* (1990) 221 Cal.App.3d 629, 644, fn. 12.) Where such substantial evidence is present, " 'no matter how slight it may appear in comparison with the contradictory evidence,' " the judgment must be affirmed. (*Ibid.*)

Section 300, subdivision (b) provides a child comes within the jurisdiction of the juvenile court if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of a parent's failure or inability to

9

adequately supervise or protect the child. The Department alleges that at the time of the October 3, 2012 hearing, there was a substantial risk that Juan and Juanita would suffer from serious physical harm as a result of father's practice of physically disciplining the children. By sustaining the petition, the juvenile court impliedly found this allegation true.

We hold that there was substantial evidence supporting the juvenile court's finding that the requirements of section 300, subdivision (b) were satisfied. When viewed in a light most favorable to the court's determination, there was evidence indicating that father hit Juan in the head with his fist and choked him about three times a week. There was also evidence that father inappropriately disciplined Juanita by beating her with a belt. Although the children had not sustained serious physical harm from father's discipline, there certainly was a substantial risk that they would sustain such harm.

Father argues that although there was evidence of *past* physical abuse, there was no evidence of a risk of such abuse *at the time of the jurisdictional hearing*. Without evidence of a current danger to the children's physical safety, father contends, the juvenile court was precluded from asserting jurisdiction under section 300, subdivision (b).

Father bases this argument *In re Rocco M.* (1991) 1 Cal.App.4th 814 (*Rocco M.*). In *Rocco M.*, the court stated: "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. [Citations.] Thus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' " (*Rocco M.,* at p. 824, fn. omitted.)

Several cases have downplayed the significance *Rocco M.* in light of subsequent amendments to section 300. In *In re J.K.*, for example, the court stated: "*Rocco M.*'s analysis does not account for or address the change in the statutory scheme, which provides for the exercise of jurisdiction based on prior harm." (*In re J.K.*, *supra*, 174 Cal.App.4th at p. 1436.) The court also stated "the value of the oft-quoted language

in *Rocco M.* is further diminished because it is clearly dicta." (*In re J.K.*, at p. 1437; accord *In re David H.* (2008) 165 Cal.App.4th 1626, 1642, fn. 14.)

Here, even under the standard enunciated in *Rocco M.*, there was substantial evidence supporting the juvenile court's assertion of jurisdiction pursuant to section 300, subdivision (b). The detention report indicates that father last physically abused Juan in June 2012—the last time he was in father's physical custody, and that Juanita was inappropriately discipline in May or April 2012. It also indicates that in July 2012, when the Department first intervened, both Juan and Juanita were afraid of father because he was "mean" and physically disciplined them. Although there was conflicting evidence indicating that father's physical discipline might have been less frequent and severe than first reported, and that the worst of it occurred long before the Department became involved, we cannot consider such evidence. As stated *ante*, we can only consider whether the evidence supporting the juvenile court's determination, granting every inference in favor of the order, was substantial.

Moreover, there was abundant evidence that father had a serious anger management problem that was not sufficiently addressed by the date of the jurisdictional and dispositional hearing. Juanita testified at the hearing that father would get "really mad" at Juan, and that father "lets his anger out by choking" Juan. Even when faced with the possibility of losing custody of his children, father could not control his anger towards the various foster parents who were temporarily taking care of Juan and Juanita. Just two days before the hearing, father told a Department social worker that he was so angry that he was going to "hurt someone and end up in jail where he will never get his kids back."

There was substantial evidence to supporting the juvenile court's finding that there was a substantial risk the children would suffer from serious physical harm as a result of father's physical discipline. We thus affirm the juvenile court's jurisdictional findings.

11

2.    *There Was Substantial Evidence Supporting the Juvenile Court's Dispositional Order*

Section 361, subdivision (c) provides that a dependent child may not be taken from the physical custody of a parent with whom he resided at the time the petition was initiated, unless the juvenile court finds by clear and convincing evidence that one or more of certain enumerated circumstances exists. One such circumstance is the following: "There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

"The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

The juvenile court found by clear and convincing evidence that the requirements of section 361, subdivision (c)(1) were satisfied. We review this finding under the substantial evidence test. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529.)

We hold there was substantial evidence that the requirements of section 361, subdivision (c)(1) were satisfied. The juvenile court reasonably concluded that in light of father's past physical abuse of the children, especially Juan, and his unresolved anger problems, it was not safe to return the children to father's physical custody at the time of the October 3, 2012, hearing.

Father's reliance on *In re Jasmine G.* (2000) 82 Cal.App.4th 282 is misplaced. There, the parents expressed remorse for their physical abuse of their daughter, the parents' therapist stated that there was no "danger" if the daughter were returned to the physical custody of one of the parents, and the parents had forsworn corporal punishment as a method of disciplining their daughter. (*Id.* at pp. 286, 288.) By contrast, in this case, father has not admitted he choked Juan three times a week, and has minimized or denied

the other allegations of physical abuse. Father has never stated that he will no longer implement corporal punishment. Further, father has not presented the testimony of a mental health professional indicating he no longer was a danger to the children. *In re Jasmine G.* therefore is distinguishable from this case.

3.      *The Juvenile Court's Dismissal of the Department's Section 300, Subdivision (a) Allegations is Moot*

The Department argues that the juvenile court erroneously dismissed its section 300, subdivision (a) allegations.[5] If one jurisdictional finding is supported by substantial evidence, however, the sufficiency of the evidence supporting any other jurisdictional finding becomes moot. (See *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875; *In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1045.) Because the juvenile court found that it had jurisdiction over Juan and Juanita under section 300, subdivision (b), and that father was an offending parent, it is of no consequence whether there was substantial evidence[6] supporting the juvenile court's dismissal of the Department's section 300, subdivision (a) allegations. We thus decline to provide an advisory opinion on the matter.

---

[5]    A child comes under the jurisdiction of the juvenile court pursuant to section 300, subdivision (a) when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted *nonaccidentally* upon the child by the child's parent or guardian." (Italics added.)

[6]    We review a juvenile court's dismissal of the section 300 allegation under the substantial evidence test. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.)

**DISPOSITION**

The juvenile court's order dated October 3, 2012, is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.

14